# HOLMES *v.* STATE.*

(Division B. Oct. 22, 1928. Suggestion of Error Overruled Nov. 5, 1928.)

[118 So. 431. No. 27131.]

<hr />

*Corpus Juris-Cyc References: Criminal Law, 16CJ, section 2270, p. 916, n. 50; Homicide, 30CJ, section 350, p. 142, n. 74; section 561, p. 316, n. 68; section 639, p. 393, n. 97; section 654, p. 408, n. 30. As to necessity· of instruction respecting malice on trial for homicide, see 13 R. C. L., 772, 773; 5 R. C. L. Supp., 709.

*Price & Price* and *J. M. Alford,* for appellant.

*H. V. Wall,* and *J. L. Byrd,* Assistant Attorney-General, for the state.

Argued orally by *J. H. Price,* for appellant, and *Hugh V. Wall* and *J. L. Byrd,* Assistant Attorney-General, for appellee.

ETHRIDGE, P. J. The appellant was indicted at the February, 1928, term of the circuit court on a charge of murdering one Lemmie Ginn, convicted of manslaughter, and sentenced to a term of fifteen years in the penitentiary.

It appears that the deceased, with a number of other boys, went to a swimming-hole in Bogue Chitto River near Stallings Bridge, in Walthall county, on the day of the killing; that some time after the deceased and the other boys reached the swimming-hole, appellant and his brother, Melton Holmes came along the road in a buggy, and stopped at the swimming-hole; that appellant had been drinking, and had fired his pistol several times along the highway; that shortly before the killing, appellant endeavored to provoke a difficulty with a party who happened to be passing along the road and insisted upon following him, stating that he desired to kill him, but he was dissuaded from doing so by his brother, Melton Holmes. It appears that the matter leading up to the shooting was, the appellant had gotten into a buggy with

another party and was driving up the road with him when they passed Lemmie Ginn and Melton Holmes, who were sitting on the side of the road; that appellant heard some one cursing and assumed that it was Lemmie Ginn cursing his brother, Melton Holmes, and got out of the buggy in which he was riding and went back to where the two boys, Lemmie Ginn and Melton Holmes, were sitting, and, addressing himself to Lemmie Ginn, said: "Nobody can call my brother a son of a bitch;" whereupon his brother, Melton Holmes, stated that the deceased had not cursed him, but that he (Melton Holmes) had cursed Lemmie Ginn; and that Lemmie Ginn also made the statement that he had not cursed Melton Holmes; that thereupon, having his pistol in his hand at the time, appellant stated that he believed he would shoot it off, and Lemmie Ginn said let him shoot, that he liked to hear it pop, but that Melton Holmes, the brother of appellant, told him not to shoot as they were too near a house belonging to a person named in the evidence; that the appellant started to shoot, whereupon Melton Holmes undertook to wrest the pistol from him, and that they struggled over the possession of the pistol.

According to some of the evidence, the shot which killed Lemmie Ginn was fired during this struggle, and according to other evidence, the shot was fired after the appellant had gotten loose from Melton Holmes.

Lemmie Ginn was taken first to his uncle's home near by, and from thence to a hospital at Tylertown where he lived a few days, and died from the effects of the wound.

According to the evidence of the appellant, when the pistol fired appellant exclaimed, "Lemmie, my God, I wouldn't have had that happen for anything in the world!" and that the deceased responded, "I know you wouldn't, but get me a doctor quick."

There was other testimony to the effect that, after the shooting another party came to where these persons were and asked about the shooting, and that Lemmie Ginn

stated to him that the appellant shot him for nothing; that said statement was made in the presence of the appellant, and that the appellant made no response thereto at the time.

One witness for the state testified directly that the appellant was some twelve or fifteen feet away from the boy Lemmie Ginn, when the shot was fired, and that nobody had hold of him at that time.

As stated above, there was conflict between the witnesses for the state, and the witnesses for the defendant as to how the shooting occurred. The state offered a dying declaration to the same effect—that he was shot by the appellant "for nothing." But the court excluded the dying declaration, and it was not admitted before the jury. After the shooting the appellant helped to carry the wounded boy to the home of his uncle, and then went some little distance and spent the night with a relative. He was arrested the next morning.

It is first complained, on appeal, that the court erred in granting the following instruction for the state:

"The court instructs the jury for the state that if you believe from all the evidence in this case beyond a reasonable doubt that the defendant deliberately shot and killed the deceased with a deadly weapon, to-wit, a pistol, malice may be inferred."

For the defendant the court gave instruction No. 7, which reads as follows:

"The court instructs the jury for the defendant, that if you believe from the evidence, that the two boys were tussling over a pistol and in tussling over the pistol the pistol was fired without knowledge or without any intent to kill any person, but purely as an accident, then it is the sworn duty of the jury to acquit, and if you have a reasonable doubt about it you should acquit."

We do not think it was reversible error to give the instruction for the state, above set out, that "malice may be inferred" if the jury believe the defendant deliberately

shot and killed the deceased. It must be remembered that the defense here set up was that the shooting was an accident. It is not a question where the defense is self-defense and the shooting may have been done deliberately to prevent the person shot from inflicting great bodily harm, or death, upon the person doing the shooting. It is true that where there is no element of veracity to be decided, and determine where the real facts appear, that presumption disappears; but as applied to the facts in this case, if the shooting was deliberate, then it was unlawful, and a presumption of malice would attend the shooting, and the shooting would be a malicious shooting. There was no reversible error in giving this instruction.

The announcement of the court in *Gamblin* v. *State* (Miss.), 29 So. 764, is not applicable to the situation here. In the course of the reception of the evidence in the case at bar, it was developed that the appellant wanted to follow a Mr. Fortenberry for the purpose of killing him. This evidence was received by the court for the purpose of showing the condition of the appellant's mind at the time of the killing; but, after the evidence was received, the appellant prepared an instruction in the following language:

"The court instructs the jury for the defendant, that if you believe from the evidence that the killing was unintentional and the defendant had no murderous purpose in his mind towards the deceased when the shot was fired, and the the two Holmes boys were engaged in a tussle over the pistol, and the pistol was fired accidentally or unintentionally, then the defendant should be acquitted, notwithstanding the fact that he was carrying the pistol, and it was fired on the public highway, or that he was drinking."

The court gave for the appellant the following instruction:

"The court instructs the jury for the defendant, that the mere acts of carrying a pistol and being drunk, and

shooting on the highway were not natural evils, but only wrong because prohibited by the state law, yet they were not *per se* and of themselves vicious or dangerous from commission of which a depraved heart could be inferred, or a reckless and wanton disregard of human life could be inferred.''

We think the instruction that was asked, and refused, as above stated, was not a correct announcement of the law. The hypothesis stated a finding of manslaughter, and the appellant was convicted of manslaughter.

We think the instruction given, as above stated, is as strong an announcement in favor of the defendant upon this phase of the case as he was entitled to receive, and that the court did not err in refusing the instruction.

The case before us is different on its face, and distinguishable from the case of *Dixon* v. *State*, 104 Miss. 410, 61 So. 423, 45 L. R. A. (N. S.) 219. In that case the firing of the pistol was not done under such circumstances as would make the death of the person the probable or natural consequence of the act. The shot in the Dixon case was fired at the ground, ricocheted by striking a tin can or something, and the bullet being thus deflected, struck and killed a person. In this case, at least, according to some of the witnesses, the shot was fired directly at and toward Lemmie Ginn; and, according to others, was fired during a struggle over a pistol in which the discharge of the pistol might naturally occur, and could be said to be a probable consequence of the struggle.

The appellant also requested instruction No. 8, which was refused. That instruction reads as follows:

''The court instructs the jury for the defendant, that you are not trying the defendant for carrying a pistol, that you are not trying him for having whisky in his possession, and you are not trying him for being drunk, and notwithstanding any or all of these, still the deceased may have been killed by mere accident, and if you believe there was no deliberate purpose of premeditated design

to kill the deceased, but that the parties were good friends and the killing was a mere accident caused by a scuffle over a pistol, then you must acquit the defendant, however deplorable it may be for a young boy's life to be lost under the circumstances.''

We do not think it was error to refuse this instruction, because it entirely omits the theory of manslaughter that might exist and which is not sufficiently negatived by the phraseology of the instruction. It is true that he was not being tried for having whisky, or for being drunk, or for shooting on the highway; but the absence of a deliberate purpose or premeditated design to kill does not of itself entitle the defendant to an acquittal when he was engaged at the time in an unlawful act, the probable consequence of which was that a person might be killed, or suffer great bodily harm.

The statute, Hemingway's 1927 Code, sections 1006 to 1023 (Code of 1906, sections 1227 to 1244), defines murder, excusable homicide, justifiable homicide, and homicide amounting to manslaughter. We think the evidence as disclosed in the trial of the case is sufficient to justify the jury in finding a verdict of manslaughter; and we think the instructions given for the appellant were sufficient to present his defense to the jury; and that there was no error in refusing the other instructions refused by the court and assigned for error here.

It is next assigned for error that the prosecuting attorney assisting the district attorney in the trial of the case, stated to the jury, in the course of his argument, that ''Defendant was armed, looking for trouble, drinking poisonous liquor, pursuing Luke Fortenberry, saying that he wanted to kill that damned son of a bitch,'' and that ''he is making as ridiculous a defense as is being made by that fellow Hickman out in California.'' The bill of particulars then recites:

''And while the court on prompt and proper objections of counsel for the defendant at the time of the argument,

and instructed the jury that such matters were not before the court, still the defendant contends that this does not take the sting out of the argument, nor cure the error committed by improper argument; and further contends that the defendant was greatly prejudiced thereby.''

It appears that the trial court sustained the objection to the argument as made, and the defendant did not make any motion for a mistrial to be entered because thereof, but took his chances by proceeding with the trial without making a motion for the entry of a mistrial.

We have some several times held that a defendant cannot so deal with the situation; that where the court sustains his objection, if he still thinks there is reversible error in the remarks, he should move to enter a mistrial, and have the cause retried before another jury.

It follows that there is no error in the court's ruling upon this proposition. The court ruled favorably to the appellant, and did all that he was requested to do about the matter. We are, therefore, of the opinion that there is no reversible error in the case, and the judgment is, therefore, affirmed.

*Affirmed.*