GUEST *v.* STATE.

(In Banc. Nov. 24, 1930.)

[130 So. 908. No. 28881.]

J. C. Roberts, of Cleveland, and Walter Dent, of Cleveland, for appellant.

**Edwin R. Holmes, Jr.**, Assistant Attorney-General, for the state.

**McGowen, J.**, delivered the opinion of the court.

On an indictment charging murder in the killing of Abraham Tucker, the appellant was tried and convicted

by a jury, and sentenced to be hanged by the court; and from said sentence he appeals to this court.

Some time in March, 1930, a negro festival was held at night at Macedonia church, on Josephine plantation, in Bolivar county. A large crowd of negroes were present, but in the early part of the evening Henry Guest was not there. About nine o'clock Myri Burnett, who was jointly indicted with Henry, told a witness to go down to Henry's house and tell Henry to come to the church and bring his and Myri's pistols; that he (Myri) had seen the fellow that stole Henry's pistol; but the witness did not deliver the message. Later Henry came to the church, asking for Tucker, the deceased; the latter went around the corner of the church to where the appellant was, and as they were standing six or seven feet apart, facing each other, two shots were fired by Henry at a time when, according to the witness, "Henry was right up on Abraham;" that the latter was not doing anything, his hands were down by his sides, and he saw nothing in them. Immediately on the firing of these two shots, Tucker, the deceased, walked back to the steps of the church, ascended them, shook his fist in the direction of Henry Guest, and said, "I am going to get you if I live," and started to enter the church, whereupon three more shots were fired. At the time of the firing of these three shots, Myri Burnett came out on the steps, and just as they were being fired said, "Look out Henry, you are going to shoot me." It appears that Tucker was then and there shot. Tucker walked into the church, and a shot or shots were fired inside, but a witness for the state says that some one ran to the window and discharged a pistol shot from inside through the window, outside the building. Tucker staggered and fell, saying to a witness, "Henry shot me." According to witnesses, the deceased was unarmed. The wound was in his head on the right-hand side, just beneath his collar bone, passing along downward, and the

bullet was taken out by the doctor just under the shoulder blade.

No witness testified as to any conversation between the appellant and the deceased. The appellant did not testify, but offered one witness, a white man, who was standing in front of the church at the time of the shooting, who said the light of an automobile was turned on the church steps, making it possible for him to see. His testimony was to the effect that the first shot was fired while the deceased was standing on the steps, and just after he had made a threat against someone, saying, "You —— I'll get you," and thrust his hand in his bosom; thereupon two or three shots were fired, "and someone came out who must have got shot, because he 'hollered;' and then there was another shot fired which must have hit this fellow (speaking of deceased), because he whirled and ran into the church."

During the course of the argument by the district attorney, he said, in closing the case:

"Counsel calls upon us to state to you what happened out there. He says, nobody knows what took place out there between these two men. I say to you, there were two who knew. Death has sealed the lips of one of them, and the other is here, sitting here at the bar of this court and his country, and here on trial. Now, let us see: That man who knew best, that man only who lived and who knew this, and who had fresh on his memory what occurred—what was his evidence, in actions which speak louder than words, with his hands dripping with human blood?

"Mr. Dent: To the remarks of the district attorney, the defendant excepts, and tenders herewith a special bill of exceptions, because it comments on the failure of the defendant to testify, which we feel the exception is well taken. Now, then, I can take the special bill of exceptions, and your Honor has signed it.

"Mr. Smith: I would like to finish what I was going to say. I would like to have the whole statement there, I think, in fairness to the state, the whole statement should be in there. I don't think I should be interrupted on this particular point. I think I ought to be permitted to develop the whole point. Now, then, I say to you, with his hands dripping with human blood, at the very time, when there was freshest on his memory what had been said, and what had been done out there, what did he do? He takes to his heels, and he undertakes to get out of the jurisdiction of this court, and he is caught down yonder, as he fled, the officer from Leland has appeared here to testify that he was on the lookout for him, that he had been wired to be on the lookout for this man, and that he was on the lookout for him, and that he went in, and that he hauled him out of that train, and he brought him here, and he is here before you. Motion overruled. Defendant excepts."

On the motion for the new trial the district attorney contended that he was answering that part of the speech of counsel for defendant, wherein he stated that nobody knew what occurred between these two men at the corner of the church. Exception was promptly taken to the argument while in progress, was overruled by the court, and again overruled when it was presented on a motion for a new trial.

First, we are of opinion that the evidence for the state was sufficient to be submitted to the jury. Second, while one of the instructions may be subject to criticism, we shall not refer to it here, for the reason that this case may be tried anew, and the error, if any, will not be likely to occur again. And, third, the argument of the district attorney, as we view it, was a comment on the failure of the accused to testify in his own behalf; and, so long as those who prosecute forget the statute which controls them in this matter, we shall be compelled to enforce it,

and reverse cases which otherwise might be free from reversible error.

Section 1651, Hemingway's Code 1927, section 1918, Code 1906, is in this language: "The accused shall be a competent witness for himself in any prosecution for crime against him; but the failure of the accused, in any case, to testify shall not operate to his prejudice or be commented on by counsel."

Repeating from the record in this case, no witness had testified as to what occurred in the conversation between the dead man and the accused. After counsel for appellant had argued this point to the jury, seeking to show a want of malice on the part of the accused—an argument he had a right to make—the district attorney now says, in effect, that he violated this statute in order that he might answer that argument. He distinctly comments on the failure of appellant to testify in his own behalf when he uses this language: "I say to you that there were two who knew. Death has sealed the lips of one of them, and the other is here sitting at the bar of this court, and his country, and here on trial. Now, then, let us see—that man who knew best, that man only who lived and who knew this, and who had fresh on his memory what occurred—what was his evidence?"

The violation of this statute, under a long line of cases, cannot be tolerated by this court. The jury knew that the appellant had not testified; and this fact was sharply developed on the statement to the jury that only two knew what occurred at the corner of the church—the accused and the deceased. He then links, after he is interrupted, the statements we have quoted with the flight of the accused. It was an ingenious effort to parry the force of the error committed; but it must remain unavailing to destroy the clear comment on the failure of the accused to testify.

Counsel for the state argues, first, that this comment was provoked by the argument of counsel for appellant

that no one knew what occurred between the two men at the church corner. According to the record, that was a fact—that may be a weak point in the state's case; and counsel for the appellant had a right to argue that. No difficulty, no threats, and whatever was said between them is not shown to have been indicative of trouble between them. It was an argument to the jury not to infer malice from the use of a deadly weapon.

Counsel for the state refers us to the case of Ransom v. State, 149 Miss. 262, 115 So. 208, wherein we held that the argument by the prosecutors complained of was invited by the defendant. There counsel for the accused went out of the record to discuss the penalty to be imposed in the case, and counsel for the prosecution answered it. But the mere statement of this fact shows that this statute was not involved. Here counsel for the state undertakes to answer a legitimate argument with one prohibited by law.

It is next insisted by the attorney-general that, after appellant had objected to the argument herein quoted, and obtained his bill of exceptions, he did not go further, and make a motion for a mistrial; and that, because of the failure to make a motion for a new trial, the objection cannot now be raised, citing the cases of Walton v. State, 147 Miss. 17, 112 So. 601; Hughey v. State (Miss.), 106 So. 361; Shows v. State, 103 Miss. 640, 60 So. 726; Holmes v. State, 151 Miss. 702, 118 So. 431, in which cases it is only necessary to observe that either the remarks complained of were held not to be reversible error, or the court sustained the objection of the appellant to the argument complained of; and it is only in cases where the objection is sustained that the appellant is required to go further, and ask the court for a mistrial, in order that he may have a trial before a jury uninfluenced by a prejudicial argument in violation of the statute or law.

In the present case the court overruled the motion of the defendant to the testimony, thereby holding that the

argument was proper, in which case, if the argument is improper and prejudicial, the lower court is in error, and its action is thereby subject to review by this court.

The argument complained of here was in violation of the statute, and prejudicial to the defendant.

Reversed and remanded.