### RUSSELL v. STATE.

(En Banc. May 22, 1939.)

[189 So. 90. No. 33607.]

E. L. Lamar, of Calhoun City, and W. I. Stone, of Coffeeville, for appellant.

Russell Wright, Assistant Attorney-General, for the State.

Argued orally by **E. L. Lamar** and **W. I. Stone**, for appellant, and by **Russell Wright**, for the State.

**McGehee, J.,** delivered the opinion of the court.

The appellant, Booker T. Russell, was indicted and tried for the murder of his cousin, Ivan Lee Russell, and

upon a verdict of guilty as charged being returned, he was sentenced to death.

We deem it unnecessary to state in detail the facts in connection with the homicide in passing upon this appeal, for the reason that the cause is to be reversed and remanded for a new trial.

Even though it be conceded that under the facts and circumstances transpiring at the scene of the killing, the jury may not have been warranted in doing otherwise than to find the appellant guilty of murder, nevertheless, there were a number of errors committed during the trial which in our opinion may have been reasonably calculated to unduly influence the jury in its decision as to the extent of the punishment to be imposed. It is true that no one of these errors, when considered separately and apart from the others, is sufficient to justify a reversal of the case, but when they are considered as a whole it is our view that they resulted in the appellant being denied a fair trial under the principles of law previously announced by this Court.

The record discloses that during the afternoon on Wednesday, before the killing occurred on Thursday, the deceased, together with his wife, sister, daughter and others went to the home of the appellant in an automobile while he was in the field and carried his wife to town where she made an affidavit against him for assault and battery and also sought to have him placed under a peace bond in regard to some trouble which the appellant and his wife had on the Sunday before. When appellant's mother informed him that his wife had been carried off by these parties, he went to town to see the sheriff, and was thereupon placed in jail in the preferred charges. On the next morning these parties all arrived at court too late, and the appellant had in the meantime been discharged. Within an hour after they had all left the courthouse, the killing occurred, according to the State's evidence, under such circumstances as to show an assassination, while the appellant interposed a plea of self-defense. Upon the trial,

the district attorney, after having asked the appellant, if he had not whipped his wife on the day before (instead of on the Sunday before), handed him an affidavit purporting to have been made before C. S. Crutchfield, a justice of the peace, and asked, "Who made that affidavit?" to which the appellant objected for the stated reason that it was an attempt to impute to the defendant a crime for which he was not on trial. The objection was overruled, and the district attorney was then permitted to ask in the presence of the jury "Who swore it out against you?" Objection was again made on the ground that the inquiry was prejudicial. This objection was likewise overruled and the appellant then answered "I don't know who swore it out." The district attorney then asked: "Whose name is that on there? Answer: Lydie Russell.

"Q. What is your wife's name? A. Lydie Russell, but I don't know whether she put in on there or not.

"Q. Is she here? A. Yes.

"Q. You have her summoned? A. Yes sir, she can tell you more about it than I can.

"Q. You know the state cannot put her on the stand."

Thereupon, objection was made, which was sustained by the court, and the jury was thereupon instructed to disregard this comment of the district attorney. A motion was then made for a mistrial and was overruled.

In the case of Holmes v. State, 151 Miss. 702, 118 So. 431, 433, the Court said:

"It appears that the trial court sustained the objection to the argument as made, and the defendant did not make any motion for a mistrial to be entered because thereof, but took his chances by proceeding with the trial without making a motion for the entry of a mistrial."

"We have some several times held that a defendant cannot so deal with the situation; that where the court sustains his objection, if he still thinks there is reversible error in the remarks, he should move to enter a mistrial, and have the cause retried before another jury."

It will be noted however that the appellant promptly making a motion for a mistrial in the case at bar, did not in any manner waive his objections to this affidavit being exhibited or to the comment of the district attorney which amounted to more than a mere comment on the failure of his wife to testify, since it went further and informed the jury that the State could not use her as a witness, leaving the inference to be drawn that the State would put her on the stand if it could. It must be conceded that a similar situation was presented in the case of Carter v. State, 99 Miss 435, 54 So. 734, and that it was held not to be reversible error, the Court observing that the questions were highly improper, and that they should not have been asked. In fact this principle is now so well established, by decisions of this Court too numerous to quote from and discuss here, that it should no longer be necessary to call attention again and again to the impropriety and prejudicial effect of comments upon the failure of the wife of the accused to testify in his behalf, or upon the inability of the State to use her as a witness.

It also appears that after the appellant had been required to admit that he had struck his wife two or three times with a switch on Sunday before the killing, he was not permitted to state in the presence of the jury the provocation, which, whether justified or not, prompted him to do so. He had stated as a witness, out of the presence of the jury, that the trouble between him and his wife on that Sunday pertained to an alleged illicit relation between his wife and the deceased. The threats made by the deceased and alleged to have been communicated to the appellant, referred to by witnesses for the defense, likewise pertained to this alleged relation. Thus, it will be seen that the fact that the district attorney exhibited the affidavit to the appellant in the presence of the jury and questioned him about the same, with the comment of the district attorney that the State could not put his wife on the stand, was highly prejudicial in view of the fact that the admission obtained by him from the ap-

pellant that he had whipped his wife was permitted to go to the jury wholly unexplained. Neither the testimony about the whipping nor the affidavit should have been admitted; but when the district attorney succeeded in having the appellant admit the fact of the whipping, the appellant should have then been allowed to disclose the cause and the facts on which he acted in the matter. The State's version *alone* of this prejudicial incident should not have been permitted to go to the jury over the objection of the appellant.

It also appears that the special prosecutor who was employed to assist the district attorney after the term of the court had been convened, had previously visited the jail, at the instance of the appellant, shortly after the killing occurred, and that there were negotiations had with the view of employing the said attorney for the defense. The father of the appellant was present on one of the occasions. The attorney took a bill of sale covering everything that the appellant had, including the shotgun with which the deceased was killed. He thereupon advised the appellant to the extent that he should keep his mouth shut and not talk to anyone about the facts of the case. Thereafter, this attorney conferred with some of the other relatives of the appellant with reference to additional security, which was not furnished. It was therefore contended by the attorney that his employment for the defense was never definitely closed, and that the facts of the case were not discussed on either of his visits to the jail. He informed the circuit clerk on Monday before the trial began that he had a bill of sale and an order for the appellant's shotgun, and although he still had the bill of sale in his possession at the trial, he stated that he was making no claim to anything therein conveyed, and that he had advised the defendant's attorney prior to the preliminary trial that he, the special prosecutor, was not employed for the defense.

After the State had closed its case, and while the appellant, as a witness in his own behalf, was being cross-

examined, he replied to the questions of the district attorney, as follows:

"Q. When you were put in jail over here you played crazy? A. Yes, sir.

"Q. You admit you did? A. Yes, sir.

"Q. And you told the sheriff the reason you were playing crazy your friends advised you to do it and that was the only chance you had to get out of it? A. Someone sent me word that Os Lawrence (attorney for the prosecution) said for me to play crazy and go to the insane hospital a few months and I would get out.

"Q. So you did play crazy? A. Yes, sir.

"Q. And you did that to get out of this killing? A. I did what he said.

"Q. Answer the question yes or no. You played crazy in order to get out of that shooting? A. I did what the lawyer said."

When this controversy arose between the appellant and the said attorney as to whether the relation of attorney and client had ever existed between them, the court of its own motion said: "Take the jury out," and to which the district attorney replied: "We want the jury to hear it. We want the privilege of putting the attorney on the stand." The record then discloses that the jury was thereupon retired, and that under the conflict of the testimony of the attorney and the defendant with reference to the alleged employment, the court held that the relation of attorney and client did not exist, and overruled a motion made by the defendant to bar the special prosecutor from a further participation in the case. Thereafter, the attorney was placed on the stand in rebuttal as a witness to contradict the testimony of the appellant hereinbefore quoted, and the controversy between the attorney and the defendant was then "aired" at length in the presence of the jury. No objection was interposed by the defense to this procedure, but in our opinion the same reason existed for the retirement of the jury by the court of its own motion when the State placed the attorney on the

stand in rebuttal, as existed when the controversy first arose. The appellant had already frankly admitted that that his asserted insanity shortly after the killing was feigned; and it was therefore immaterial who advised it, or whether it had been suggested by anyone at all. Since the jury was vested with the power to determine whether or not the death penalty should be inflicted in the case, this issue of life or death should have been decided by the jury, uninfluenced by extraneous and highly prejudicial issues.

If it were true, as testified by the attorney, that he had never discussed the facts of the case with the appellant and the employment was never consummated, then the trial court was not in error in holding that the relation of attorney and client had never existed; but it should be clearly understood that the question of whether a fee is raised is not the test as to the competency of an attorney to testify where he has been consulted in a professional capacity and has given advice of any nature or character whatever relating to the case. Otherwise, it could be said by analogy that if a patient consults a physician or surgeon in his professional capacity, and then finds himself unable to pay the medical or surgical fee required, the privilege of the communication would be removed. At any rate, no part of this controversy should have been heard in the presence of the jury.

Again, two of the most material witnesses, Ellard and Trenor, were introduced as the last ones offered in rebuttal by the State, and gave testimony which was of the most damaging character, over appellant's strenuous objections, and all of which was properly a part of the State's case in chief. The overruling of objections made on behalf of the appellant to the evidence upon the trial is here assigned as error. While this error above is not sufficient to reverse, under the authority of the case of Roney v. State, 167 Miss. 827, 150 So. 774, it was nevertheless unfair to the accused for these two witnesses in chief to have been held in reserve until after he had rested his case.

Neither did right or justice demand, nor expediency require, the taking of any undue advantage of the accused. If he is to be hanged, it should not be done until a jury shall have so determined on a trial purged of the errors and extraneous matters here disclosed.

Reversed and remanded.

**McGowen, J.**, and **Smith, C. J.**, dissent.