478 So.2d 123 (1985)
STATE of Louisiana
v.
Norton HAMILTON.
No. 83-KA-2140.
Supreme Court of Louisiana.
October 21, 1985.
Concurring Opinion October 22, 1985.
Rehearing Denied November 27, 1985.
*124 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William Campbell, Michael McMain, Asst. Dist. Attys., New Orleans, for plaintiff-appellee.
Ann Woolhandler, New Orleans, for defendant-appellant.
Concurring Opinion of Justice Dennis October 22, 1985.
LEMMON, Justice.
Defendant was convicted of first degree murder and sentenced to death. In this appeal, the principal issue in the guilt phase of the bifurcated trial is whether the court's instruction to the jury that a person is presumed to intend the natural consequences of his deliberate acts constituted an unconstitutional presumption which relieved the state of its burden of proving the specific intent element of the crime. The principal issues in the penalty phase concern the admissibility of the testimony of the victim of an armed robbery committed by defendant earlier on the day of the murder and the due process requirement of pretrial notice to the defendant that evidence of activity unrelated to the charged crime will be offered.[1] We conclude that the instruction constituted a prohibited conclusive presumption, but that since the instruction required the prosecution to prove the only disputed issue (whether the act of shooting was deliberate) in order for the presumption to apply, the error in giving the instruction did not prejudice defendant *125 and was harmless. We further conclude that the introduction, without notice, of the evidence of the unrelated armed robbery, for which defendant had never been convicted, sufficiently prejudiced defendant that the penalty phase must be retried.

Facts
On November 12, 1979, the owner of a liquor store was shot and killed during an attempted armed robbery. The shot was heard by a customer who had just left the store and walked about half a block down the street. The customer saw a man run from the store and enter a waiting automobile, which was immediately driven away by another person.
The investigation (for reasons not apparent in the record) focused on defendant. When defendant was arrested on unrelated charges fourteen days after the murder, he confessed to this shooting during the interrogation, and he named his accomplice. He insisted, however, that the gun had fired accidentially in an upward direction as he pulled it from his waistband.
At trial, the customer who heard the fatal shot identified defendant as the person who stood next to him at the counter of the liquor store holding several bottles of wine and who later ran from the store after the sound of the gunshot. The witness further stated that defendant and the victim were alone when he left the store just before the shooting, although there was another person on the premises when he returned after the shooting. Fingerprints found on wine bottles left on the counter were determined to be defendant's prints.
A detective testified that the cash register was closed when he arrived at the store and that the amount of the last customer's purchase was still showing on the register. The victim's wallet was undisturbed, and it appeared that nothing had been taken from the store. The detective also read defendant's confession to the jury and testified that he had never during his thirteen years of service on the police force seen a .38 caliber pistol discharge accidentally in the manner described by defendant in his confession. An expert in firearms and firearms identification testified that the .38 slug removed from the victim was characteristic of a cheap German handgun and that such guns required a "much stronger pull" than the 3½ to 4½ pounds of pressure required to fire a well-made weapon.
The victim's son testified that the cash register was a very old model which opened only after a button and then a plunger were sequentially engaged. He also stated that there was a standing order to all employees to cooperate, rather than resist, in any robbery situation.
The consulting pathologist testified that the bullet entered near the bridge of the victim's nose and passed through the head on an almost horizontal path. He opined that if the victim were standing erect and looking straight ahead, the path of the bullet would have been on a horizontal plane.
Defendant did not take the stand, and the defense did not call any witnesses or introduce any evidence.
In argument to the jury, the prosecutor theorized that defendant and an accomplice planned the armed robbery, but that defendant fired the gun when the victim did not hand over the money.[2] The prosecutor further argued that defendant, when he could not open the register easily, fled from the store and jumped into the car driven by his accomplice.
Defense counsel, conceding that defendant was guilty of second-degree murder, urged the jury to accept defendant's statement that the gun fired accidentally.
*126 The judge instructed the jury in part that "[t]he law holds that a sane man is presumed to intend the natural and probable consequences of his own deliberate acts". The jury unanimously found defendant guilty of first degree murder.
During the prosecution's case in chief in the penalty phase, a food store clerk, over defense counsel's objection, identified defendant as the gunman who robbed his store with a gun several hours before this murder. The witness testified that defendant warned the victims of the robbery that "nobody should act like a hero".[3]
The prosecutor further established that defendant had a prior conviction for simple battery resulting from an incident which occurred while defendant was in jail. Defense counsel presented no evidence of mitigating factors.
The jury recommended the death penalty, finding the existence of the aggravating circumstance that the killing had occurred during an attempted armed robbery.

Instruction on Specific Intent
In the guilt phase, the only contested issue was whether defendant deliberately fired the gun at the storeowner during the robbery (in which case he is guilty of first-degree murder) or whether defendant fired the gun accidentally during the robbery (in which case he is guilty of second degree murder).[4] The evidence of the path of the bullet indicated that defendant fired the gun directly at the victim's head, contradicting defendant's statement in his confession that the gun fired as it was pointing upward when he pulled it from his waistband.[5] The evidence of the force necessary to pull the trigger also suggested a deliberate act. On the other hand, defendant left the store without taking the money in the cash register, the victim's wallet, or the liquor on the counter, suggesting that defendant may have fled in panic after the gun fired accidentally. This suggestion, of course, may be explained away in part by the fact that the register was difficult to open. Nevertheless, there was evidence which the jury could have accepted to support either theory.[6]
Thus, the instruction on specific intent was particularly significant. In instructing the jury on this essential element of the crime, the judge stated:
"Specific intent is, you have heard a lot about that, specific intent. The law with *127 reference to the specific intent to kill or the specific intent to inflict great bodily harm is as follows: First of all the time element. The law knows no specific time within which an intent to kill or an intent to inflict great bodily harm must be formed, so as to make a homicide murder. If the will of the person accompanies the act, a moment antecedent to the act which causes the death, it will be as completely sufficient to make the offense murder, as if it were a day or any other time. It is sufficient if there was a design or a determination to kill or a design or determination to inflict great bodily harm formed in the mind of the slayer at any moment before or at the time of the fatal blow. If an assault is made upon a person not with the intent of killing him, but with the specific intent of inflicting great bodily harm upon him and death is caused by such assault, it is murder. The law holds that a sane person is presumed to intend the natural and probable consequences of his own deliberate acts. Consequently it is murder if the sane person intentionally assaults another in such a manner as would likely cause death or likely cause serious bodily harm. In such case it is necessary that the assault be of such a nature as would likely cause death or likely cause serious bodily harm, and the death that resulted must have been the natural an (sic) probable consequences of the intentional act or intentional acts. A specific intent to kill may be implied where there are no external signs of the intent beyond the mere fact of the homicide itself. If there were no just grounds for the killing, when the killing was without provocation or upon so slight a provocation as not to justify the killing. A specific intent to commit a crime, to do bodily harm would also be implied in any deliberate cruel act, consciencely (sic) committed by one person against another. If for instance a man armed with a deadly weapon should suddenly, with little or no apparent cause or provocation, kill another, the law would presume that such a killing was deliberate and intentional, and done for the purpose of killing or inflicting great bodily harm. A specific intent to inflict great bodily harm may sometimes manifest itself by external circumstances capable of proof. For instance where it is established that a person lay in wait for his victim, where the accused had made previous threats against the deceased, where there existed beyond the parties former grudges, and when a party arms himself beforehand, et cetera, or any other facts susceptible of proof, which shows a prepreconcerted (sic) scheme to carry out the unlawful." (emphasis supplied)
Defense counsel did not object to the instruction.[7]
On appeal, defense counsel argues that the instruction created a presumption of specific intent in violation of the Fourteenth Amendment to the United States Constitution, as interpreted in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
In Sandstrom, the defendant, charged with the crime of deliberate homicide, admitted in his confession that he killed the victim. At trial, two mental health experts described defendant's mental state at the time of the incident, and defense counsel argued to the jury that defendant, because of his personality disorder aggravated by alcohol consumption, did not "purposely or knowingly" cause the *128 death, as required by the statutory definition of the crime. The trial judge instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts". The Supreme Court unanimously held that the instruction violated the constitutional prohibition against conviction except upon proof beyond a reasonable doubt of every essential element of the crime. The majority reasoned that since the jurors were not told that they had the choice to decide whether defendant acted "purposely" or that they might infer such a conclusion, a reasonable juror could easily view that instruction as a mandatory direction to find intent once convinced of the facts triggering the presumption. A conclusive presumption unconstitutionally relieves the state of its burden of persuasion because the presumed element is removed from the case upon proof of the predicate facts.[8] See Francis v. Franklin, ___ U.S. ___, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Alternatively, the Court reasoned that the jurors could have interpreted the instruction as directing the finding of intent upon proof of a voluntary action and its ordinary consequences unless the defendant proved the contrary, thereby shifting the burden of persuasion to the defendant. A mandatory rebuttable presumption, which relieves the state of its affirmative burden of persuasion, is less onerous to the defendant than a conclusive presumption, but is no less unconstitutional. See Francis v. Franklin, above. The Court accordingly reversed the judgment of the state court that had affirmed the conviction, but noted that the state court was free on remand to consider issues such as harmless error. The Court's leaving open the harmless error issue is particularly significant in the present case.
Intent is a fact which usually must be proved by showing circumstances from which the requisite intent may be inferred. Generally, the jury makes the determination of intent by drawing inferences from the proved circumstances.
It is logical for the jury to draw the inference that a person intends the natural and probable consequences of his acts. The jury must be free, however, to draw such an inference or not, as the jury sees fit according to the circumstances. The constitutional problem arises when the jury is instructed that it must find the factual element of intent when the evidence simply establishes the performance or omission of an act.
In the present case, the judge told the jury that the law presumes that a person intends the natural and probable consequences of his own deliberate acts.[9] While the instruction contained a conclusive presumption of intent prohibited by Sandstrom, the presumption did not come into *129 play unless the jury had already found that the act of the defendant in firing the gun was deliberate. The instruction simply told the jurors to presume that defendant intended the consequences of his act if the evidence established that the act was deliberate. Inasmuch as the deliberateness of the act was the only disputed issue before the jury in the guilt phase, defendant was not prejudiced by an instruction concerning the presumption of intended consequences (killing or causing of great bodily harm) once the jury found that the act was deliberate. There was no question in this case that the consequences were intended if the act was deliberate.[10] Moreover, the judge told the jury, immediately after the improper instruction, that "[c]onsequently it is murder if a sane person intentionally assaults another in such a manner as would likely cause death or likely cause great bodily harm". (Emphasis supplied)
We conclude that the instruction did not lessen the state's burden of proving that defendant fired the gun intentionally. The trial judge's error in giving the instruction was harmless beyond a reasonable doubt. State v. Gibson, 391 So.2d 421 (La. 1980).

Evidence of Unrelated Crimes
Defendant contends that the trial court erred in the penalty phase of the trial by allowing evidence, over objection to the admissibility of the evidence and to the lack of prior notice to the defense, of an unrelated armed robbery for which defendant had been charged but not convicted. The evidence consisted of the testimony of a food store clerk who identified defendant as the person who robbed his store and threatened the patrons with a gun several hours before the murder at issue in this case.
In the ordinary criminal case involving only a determination of guilt, admission of evidence of other crimes committed by defendant creates the risk that the defendant will be convicted because of his bad character, irrespective of his guilt of the particular crime. Because a conviction should be based on guilt and not on character, evidence of other crimes is generally inadmissible unless the probative value of the evidence outweighs its prejudicial effect and unless other safeguards are met. State v. Hatcher, 372 So.2d 1024 (La.1979). One of the important safeguards is notice by the prosecutor to the defendant that the evidence will be offered at trial. This advance notice, which is necessary to afford defendant a meaningful opportunity to prepare his defense, is a corrollary to the right of confrontation and cross-examination. State v. Prieur, 277 So.2d 126 (La. 1973).
The other crimes evidence in the present case was not offered until the penalty phase, at which time the jury had already determined defendant's guilt. While the character of the defendant is usually irrelevant to the determination of guilt, it is one of the factors on which the determination of sentence is focused.[11]
This court has approved evidence of convictions of unrelated crimes in the penalty phase.[12] However, this court has never made a square holding on the admissibility *130 in the penalty phase of a capital case of evidence of an unrelated crime for which the defendant has not been convicted. Nor has the court made a square holding on the requirement of pretrial notice of such evidence, irrespective of its admissibility.
There have been appeals in capital cases in which the prosecutor introduced evidence in the penalty phase of unrelated crimes for which the defendant had not been convicted, but this court decided the appeals on other grounds without expressly deciding the question of the admissibility of the evidence. In Sawyer, the prosecutor introduced evidence that defendant was indicted for second degree murder before he pleaded guilty to a reduced charge of involuntary manslaughter. Noting that both defendant and his sister testified extensively in the penalty phase concerning defendant's version of the prior unrelated crime, this court held that even if the fact of the indictment should have been excluded, the admission was not reversible because the gravamen of the evidence was a presentation of the facts of the occurrence.
In Rault, defendant was convicted of raping and murdering an accomplice in an embezzlement scheme. In the penalty phase, the prosecutor introduced evidence that defendant had previously embezzled a former employer. Other evidence established that another employee of the former employer, to whom defendant had admitted the embezzlement, had the brakelines of his car cut while attending church services, after defendant had inquired about the location and time of the services. However, the defense had previously introduced testimony by a psychiatrist during the guilt phase of the murder case that defendant had embezzled money from the former employer and had cut the brakelines of the coemployee.[13] The court held that since the jury was already aware of the evidence introduced in the guilt phase, defendant did not suffer any prejudice from the prosecutor's failure to notify him that the evidence would be offered in the penalty phase or from the admission in the penalty phase of evidence of the criminal activity for which defendant had not been convicted.
In Wingo, the defense in the penalty phase presented a clinical psychologist who had tested and interviewed defendant. Based on the assumed fact that the defendant had no history of aggressive crimes, the psychologist concluded that defendant was a non-violent person (lending credence to defendant's contention that his robbery accomplice acted alone in killing the victims). The prosecutor cross-examined the psychologist concerning how his conclusion would be affected if defendant had wantonly vandalized a home during a burglary because the victim "had more" than he did. The prosecutor also cross-examined defendant about vandalism during the burglaries (for which defendant was in jail awaiting trial when he escaped and committed the murders) and about his threats of violence toward the police during his arrest. On rebuttal, the prosecutor introduced evidence of vandalism during the burglaries (for which defendant was charged) and of defendant's hostility when he was arrested for those burglaries. This court held that the prosecutor, who had presented no new evidence during his case in chief in the penalty phase, was entitled to challenge the psychologist's opinion by cross-examination and evidence to show the opinion was based on a faulty premise. In effect, the prosecutor was rebutting defense evidence that defendant has never previously committed aggressive or violent crimes, and there was particular relevance to the evidence of defendant's prior criminal behavior.
As stated above, the instant case marks the first time that this court is called upon to decide on the admissibility in the penalty phase of evidence of unrelated crimes for which defendant has not been convicted, when the evidence has neither been introduced first by the defense nor properly used to rebut other defense evidence. Perhaps such evidence should be totally excluded *131 on the basis that only convictions are competent as character evidence or that an accused should be presumed innocent of charged criminal activity until convicted. Or perhaps such evidence should be excluded because the admission will result in the trial of an unrelated crime during the penalty phase of a capital case before a jury which has already found defendant guilty of another crime.
On the other hand, such evidence arguably may be admissible in a particular case if there was clear and convincing evidence of defendant's connection with the commission of the unrelated crime and if the evidence was sufficiently related in time or method to the charged crime to have relevance and substantial probative value as to defendant's character and propensities under La.C.Cr.P. Art. 905.2.[14] These considerations are essentially the same as those which are included as safeguards for the admissibility of other crimes evidence in non-capital cases.[15] In the present case, however, it is not necessary to reach the issue of the admissibility of the evidence, inasmuch as the penalty must be set aside because of the prosecutor's failure to notify defendant that evidence of unrelated crimes would be offered in the penalty phase.
Prior to trial, defendant's application for a bill of particulars questioned whether the prosecutor intended to offer evidence of the commission of another crime, and the prosecutor answered "no". No such evidence was offered in the guilt phase, but the evidence previously discussed was admitted in the penalty phase over defendant's objection to the lack of notice and to the admissibility.
In State v. Rault, above, this court recognized that "[a]rguably under LSA-C. Cr.P. Art. 720 the state should inform the defendant of its intent to offer other crimes evidence", but did not reach the issue because there was no surprise or prejudice in allowing evidence of embezzlement and attempted murder which had previously been placed before the jury by a defense witness. And in State v. Wingo, above, since the other crimes evidence was not introduced until defendant presented evidence in the penalty phase that he had no history of aggressive or violent crimes, the due process considerations pertinent to this case did not apply. Here, however, the entirely new evidence of another crime was offered by the prosecutor in the case in chief in the penalty phase, without any notice whatsoever to defendant to be prepared to meet such evidence.
La.C.Cr.P. Art. 720 requires the prosecutor to inform the defendant of his intent to offer evidence of the commission *132 of any other crime if the defendant moves to obtain the information. The purpose of the notice is to afford the defendant an opportunity to counteract the evidence and to gather evidence in defense. While Article 720 generally applies to the determination of guilt, there is no apparent reason that the article should not apply to the determination of penalty in a bifurcated capital case. The rules of procedure applicable to the trial of the guilt phase are expressly deemed applicable, where appropriate, to the penalty phase. La.C.Cr.P. Art. 905.2. Applying the notice provision of Article 720 to the penalty phase is consistent with the spirit of Article 905.2. La. C.Cr.P. Art. 3.
The Louisiana Constitution requires notice of the nature and cause of the accusation for which the defendant is to be tried. La. Const. Art. I § 13 (1974). The defendant's constitutional right to confront and cross-examine the witnesses against him at trial under La. Const. Art. I § 16 (1974) would be severely impaired if the defendant were not informed within a reasonable time before trial that he must be prepared to meet evidence relating to crimes other than the charged crime. Moreover, fundamental fairness dictates that an accused receive adequate prior notice that evidence of unrelated criminal activity may be offered by the prosecutor in an effort to punish him for the charged crime.[16]
In the present case, the prosecutor, despite his negative answer to defendant's discovery request, proceeded in the penalty phase to offer evidence of another crime. The trial court erred in overruling defendant's objection to the evidence, since defendant had no prior notice that the evidence would be offered.
The error in admitting the evidence was not harmless beyond a reasonable doubt. The evidence was the only indication to the jury of any previous violent criminal behavior by defendant. The admission of the evidence also formed the only basis for the prosecutor's argument to the jury that defendant, who had no prior felony convictions, should be sentenced to death because he committed this murder while on "a robbery and murder spree". We simply cannot say that this evidence did not contribute to the jury's recommendation of the death sentence.

Decree
For these reasons, defendant's conviction is affirmed, but his sentence is set aside, and the case is remanded to the district court for another penalty hearing.
BLANCHE, J., concurs and assigns reasons.
WATSON, J., concurs in part, dissents in part, and assigns reasons.
MARCUS, J., concurs in part and dissents in part for reasons assigned by WATSON, J.
DENNIS, J., concurs with reasons.
BLANCHE, Justice (concurring).
I concur in the affirmance of the defendant's conviction. I further concur with the remand to afford the defendant another penalty hearing. The overwhelming relevance of defendant's commission of another armed robbery within a few hours of the crime for which he was convicted was probably the "straw that broke the camel's back" in the jury's determining his eligibility for the death sentence. The defendant was entitled to notice of this unproven, unrelated crime as a matter of fairness, albeit not mandated by any positive law.
The fairness involved in failing to give notice of an unproven crime is that it impairs the defendant's right to be informed within a reasonable time so as to defend *133 against such charge. The same considerations are not present with regard to crimes of which the defendant has been convicted. As to these crimes these are crimes of which the defendant is well aware and their introduction without notice should come as no surprise in such a hearing.
WATSON, Justice, concurring and dissenting.
I concur in the majority's conclusion that the Sandstrom v. Montana error made by the trial court in instructing the jury was harmless beyond a reasonable doubt.
I dissent from reversing defendant's death sentence for lack of specific notification that evidence of an unrelated crime would be offered in the penalty phase of trial.
LSA-C.Cr.P. art. 720 requires the district attorney to inform defendant if the State intends to offer evidence of other crimes which show knowledge or intent under LSA-R.S. 15:445 and LSA-R.S. 15:446. These questions are only pertinent when they form an essential part of the inquiry into guilt. Once the question of guilt has been decided, the sentencing hearing focuses on the circumstances of the offense and the character and propensities of the offender. LSA-C.Cr.P. art. 905.2. The very nature of the sentencing inquiry puts a defendant on notice that evidence of any prior criminal conduct will be considered.
Testimony that defendant had committed an armed robbery several hours before the armed robbery which resulted in this murder was highly relevant to the question of Hamilton's character and propensities. Despite lack of specific notice by the State, defense counsel should have anticipated this evidence at the penalty phase of trial. Nothing in the statutes or jurisprudence justified a belief that such evidence would be excluded.
In his bill of particulars, defendant asked whether the prosecutor intended to offer evidence of other crimes admissible under the authority of LSA-R.S. 15:445 or 15:446. The state's answer was negative. In connection with another query in the bill of particulars, defense counsel was furnished a copy of defendant's "rap" sheet and thus was aware of the other armed robbery charge.
I respectfully dissent from the holding that evidence of other crimes is not admissible at the penalty phase of trial.
DENNIS, Justice, concurring.
I respectfully concur.
Code of Criminal Procedure article 905.2 provides that "[t]he hearing shall be conducted according to the rules of evidence" and that "[e]vidence relative to aggravating or mitigating circumstances shall be relevant irrespective of whether the defendant places his character at issue." This indicates that the introduction of evidence is governed by the rules of evidence, including the statutory rules set forth by R.S. 15:422-501. Our law contains also a great many jurisprudential rules, not the least important of which are the rules adopted by this court in State v. Prieur, 277 So.2d 126 (La.1973), to guarantee due process of law and relevance in the introduction of other crimes evidence. See State v. Sawyer, 422 So.2d 95, 106 (La. 1982) (Dennis, J., concurring).
NOTES
[1] Defendant's other assignments of error involve only settled principles of law and are treated in an unpublished appendix, which is attached to this opinion and is part of the official record.
[2] The prosecutor's theory, based on the medical evidence of the path of the bullet and the firearms evidence of the pressure required to pull the trigger, disputed defendant's version of the incident (stated in his confession) that the gun fired accidentally while it was pointed upward. The medical evidence indicated that defendant pointed the gun directly at the victim's head at eye level at relatively close range. The firearms evidence indicated that a strong deliberate effort was required to pull the trigger of the murder weapon.
[3] At the time of trial, defendant had been charged with the food store robbery, but the case had not been tried.
[4] First degree murder is defined by La.R.S. 14:30, which provides in part:

"First degree murder is the killing of a human being:
"(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery."
La.R.S. 14:30.1 defines second degree murder as follows:
"Second degree murder is the killing of a human being:
"(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
"(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm."
[5] In his confession, defendant stated:

"I started to pull the gun from my waistband on my right side. As I was pulling the gun from my waistband to grip it, to point it, my finger touched the trigger too soon and the gun went off and hit him. When the gun went off, it scared me and I knew that the bullet had hit the man somewhere in the head because the gun was pointed upward when I was gripping it."
[6] Although the jury could have decided either way depending on the evidence accepted, the evidence was sufficient to support the conviction. The evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis fails, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676 (La. 1984).
[7] In death penalty cases, this court has reviewed assignments of error, despite the absence of a contemporaneous objection, in order to determine whether the error "render[ed] the result unreliable", thus avoiding later consideration of the error in the context of ineffective assistance of counsel. See Washington v. Strickland, 466 U.S. 668, ___, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

The prosecutor also failed to attempt correction of the erroneous instruction. Since the prosecutor has an interest in insuring defendant a fair trial free of reversible error, he has a duty to correct erroneous instructions, even those unfavorable to the defendant. See Standards for Criminal Justice § 3-1.1(c) (2d ed. 1980), which provides that "[t]he duty of the prosecutor is to seek justice, not merely to convict".
[8] In a conclusive presumption, fact A must be taken as true when fact B has been proved. McCormick on Evidence § 342 (2d ed. 1972).
[9] The Louisiana Judges Bench Book, Jury InstructionsCriminal, Vol. I, § 4.1 (Louisiana Judicial College 1985) warned of the constitutional problems with such an instruction and recommended the following instruction on criminal intent:

"Criminal intent may be specific or general.
"Specific criminal intent is that state of mind which exists when the circumstances indicate that the defendant actively desired the prescribed criminal consequences to follow his act or failure to act.
"General criminal intent is present when the circumstances indicate that the defendant must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. General criminal intent is always present when there is specific intent.
"Whether criminal intent is present must be determined in light of ordinary experience.
"Intent is a question of fact which may be inferred from the circumstances.
"You may infer that the defendant intended the natural and probable consequences of his acts." (emphasis added)
The Federal Rules of Evidence have eliminated all reference to "presumptions" in criminal cases. 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 15.03 (3d ed. 1977). The treatise further notes that when there is a logical relationship between the basic fact and the presumed fact, it is more logical (and accurate) to say that proof of the former supports an inference of the latter than to say it raises a presumption. See also County Court of Ulster County v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed. 2d 777 (1979).
[10] Arguably, there might be prejudice in an instruction about the presumed intent of the natural consequences of a deliberate act in a case in which the accused admits that he fired the gun deliberately, thinking the gun was loaded with blanks and intending only to frighten the victim.
[11] The sentencing hearing is governed by La.C. Cr.P. Art. 905.2, which provides that "[t]he sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender".
[12] Evidence of convictions of unrelated crimes has been permitted, even if the defendant does not place his character at issue, because the focus of the hearing is on his character. State v. Sawyer, 422 So.2d 95 (La. 1982); State v. Jordan, 440 So.2d 716 (La.1983); State v. Wingo, 457 So.2d 1159 (La.1984). It is the conviction in the guilt phase which places the convicted offender's character at issue in the penalty phase. State v. Jordan, above. La.R.S. 15:481 and 483, which limit the introduction of character evidence, are designed to insure that a conviction is based on guilt rather than bad character. Once the conviction is obtained in the guilt phase, those statutes are not applicable to exclude relevant and competent evidence of bad character in the penalty phase. State v. Sawyer, above.
[13] The defense offered the evidence for the purpose of supporting an insanity defense based on defendant's assertion that deceased relatives had orchestrated both the present murder and the prior embezzlement and attempted murder.
[14] The Model Penal Code would apparently allow the evidence offered in this case. The scope of the evidence in the sentencing hearing recommended in Model Penal Code and Commentaries § 210.6 (1980) is as follows:

"In the proceeding, evidence may be presented as to any matter that the Court deems relevant to sentence, including but not limited to the nature and circumstances of the crime, the defendant's character, background, history, mental and physical condition and any of the aggravating or mitigating circumstances enumerated in Subsections (3) and (4) of this Section. Any such evidence, not legally privileged, which the Court deems to have probative force, may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant's counsel is accorded a fair opportunity to rebut such evidence. The prosecuting attorney and the defendant or his counsel shall be permitted to present argument for or against sentence of death." (emphasis supplied)
[15] In order to use other crimes evidence relating to the issue of guilt in a non-capital case, the prosecutor must establish (in addition to the notice requirement) that (1) there is clear and convincing evidence of the commission of the other crime and the defendant's connection therewith; (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses is so peculiarly distinctive that one must logically say they are the work of the same person; (3) the other crimes evidence is substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character; (4) the other crimes evidence tends to prove a material fact genuinely at issue; (5) the probative value of the extraneous crimes evidence outweighs its prejudicial effect. State v. Hatcher, 372 So.2d 1024 (La. 1979).
[16] The Model Penal Code, quoted above, expressly requires a "fair opportunity" to rebut evidence of "the defendant's character, background, history, mental and physical condition...." Of course, the opportunity to rebut is a "fair" one only if the party is afforded notice that he must be prepared to rebut evidence unrelated to the charged criminal activity.

Georgia has an express provision for pretrial notice of evidence in aggravation applicable to all sentencing hearings, permitting the admission of "only such evidence in aggravation as the state has made known to the defendant prior to his trial". Official Code of Georgia, § 17-10-2(a).