ROBERTSON, Justice,
dissenting:
I.
For reasons I have noted in Thomas v. State, 517 So.2d 1285,1288 (1987), I dissent from denial of a rehearing in the present case on a single issue: Gregory Montecarlo *1312 Jones’ assertion of rights created in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
As in Thomas, the majority acts not on the merits but denies the Batson claim for failure timely to assert it. As in Thomas, illusion and wish becloud reason and fairness as is made apparent by our timetable.
April 3, 1985 Jones’ trial in Circuit Court (the point when the majority says he should have asserted the Batson claim)
April 22, 1985 cert, granted in Batson
April 30, 1986 Batson decided
Assuming Batson retroactivity, a matter established in Griffith v. Kentucky, 479 U.S. -, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and thus put beyond our reason for thought, why should a man be executed, his appeal denied, for failure to assert the Batson right, a right that had no existence at the time of his only procedural opportunity to assert it?
II.
A.
More so than in the case of Elisha Thomas, Jr., Jones’ case should be Batson-scmti-nized because Jones has been sentenced to die. The Supreme Court of the United States in recent years has repeatedly recognized that the penalty of death is qualitatively different from any other form of punishment known to our society and, because of its uniqueness, proceedings and procedures precedent to its imposition simply are not the same as in other cases. Because capital punishment is “qualitatively different,” Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) holds that
there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment.
428 U.S. at 305, 96 S.Ct. at 2991.
Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) observes, in a somewhat different context, that the penalty of death is “so profoundly different” that a greater degree of sentencing reliability is required. 438 U.S. at 604-05, 98 S.Ct. at 2964-65.
Only because there are some who would have it otherwise, I would note that the death is different principle has been recognized by the Supreme Court on occasions almost too often to enumerate. See, e.g., Booth v. Maryland, 478 U.S.-,-n. 12, 107 S.Ct. 2529, 2536 n. 12, 96 L.Ed.2d 440, 452 n. 12 (1987); Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); Spaziano v. Florida, 468 U.S. 447, 456, 104 S.Ct. 3154, 3160, 82 L.Ed.2d 340, 349 (1984); Sullivan v. Wainwright, 464 U.S. 109, 112, 104 S.Ct. 450, 451-52, 78 L.Ed.2d 210, 213 (1983); Stephens v. Kemp, 464 U.S. 1027, 1032, 104 S.Ct. 562, 565, 78 L.Ed.2d 370, 375 (1983) (per dissenting opinion of Justice Powell, joined by Chief Justice Burger, Justice Rehnquist and Justice O’Conner); Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392, 393, 403 (1980); Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973, 989-90 (1978); Coker v. Georgia, 433 U.S. 584, 598, 97 S.Ct. 2861, 2869, 53 L.Ed.2d 982 (1977); Gardner v. Florida, 430 U.S. 349, 357-58, 97 S.Ct. 1197, 1204-05, 51 L.Ed.2d 393, 402 (1977); Gregg v. Georgia, 428 U.S. 153, 187-88, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976); Furman v. Georgia, 408 U.S. 238, 287-89, 306, 92 S.Ct. 2726, 2751, 3752, 3760, 33 L.Ed.2d 346, 376-78 (1972) (Brennan, J., and Stewart, J., concurring).
B.
A comparable principle recognized in this state is that of heightened appellate scrutiny of criminal trials which have resulted in imposition of the sentence of death. The idea has roots deep in our past. See, e.g., Russell v. State, 185 Miss. 464, 469,189 So. 90, 91 (1939). It received its modem expression in Irving v. State, 361 So.2d 1360 (Miss.1978) where we wrote *1313 361 So.2d at 1363. Other cases recognizing the principle, beginning with the most recent, include Williamson v. State, 512 So.2d 868, 872 (Miss.1987); Faraga v. State, 514 So.2d 295, 309 (Miss. 1987); Stringer v. State, 500 So.2d 928, 931 (Miss. 1986); Smith v. State, 499 So.2d 750, 756 (Miss. 1986); West v. State, 485 So.2d 681, 688 (Miss.1985); Pinkton v. State, 481 So. 2d 306, 308 (Miss.1985); Fisher v. State, 481 So.2d 203, 211 (Miss.1985); Fuselier v. State, 468 So.2d 45, 50 (Miss.1985); Jones v. State, 461 So.2d 686, 690 (Miss.1984); Moffett v. State, 456 So.2d 714, 721 (Miss.1984); Billiot v. State, 454 So.2d 445, 454 (Miss.1984); Neal v. State, 451 So.2d 743, 750 (Miss.1984); Williams v. State, 445 So.2d 798, 810 (Miss.1984); Laney v. State, 421 So.2d 1216, 1217 (Miss.1982).
*1312 We recognize that thoroughness and intensity of review are heightened in cases where the death penalty has been imposed, [citation omitted] What may be harmless error in a case with less at stake becomes reversible error when the penalty is death.
*1313 C.
This Court hardly stands alone among state courts of last resort in recognizing that death is different. In many other jurisdictions we find the same careful approach to appellate review of capital cases, although on occasion the juridical logic offered in support appears fuzzy.
Because death is “profoundly different,” California courts for a number of years have applied a rule that any substantial error in the penalty phase is deemed to have been prejudicial. People v. Robertson, 188 Cal.Rptr. 77, 96, 33 Cal.3d 21, 54, 655 P.2d 279, 298 (1982). The Utah Supreme Court has stated that “scrupulous care must be exercised by the state in capital cases in both the guilt-determining and penalty phases in presentation of evidence and argument because of the acknowledged uniqueness of the death penalty.” State v. Brown, 607 P.2d 261, 271 (Utah 1980). See also State v. Windsor, 110 Idaho 410, 716 P.2d 1182, 1193 (1985); State v. Johnson, 24 Ohio St.3d 87, 494 N.E.2d 1061, 1067 (1986); Commonwealth v. Moody, 476 Pa. 223, 382 A.2d 442, 446 (1977); State v. Martin, 303 N.C. 246, 278 S.E.2d 214, 219 (1981); State v. Timmons, 192 N.J.Super. 141, 469 A.2d 46, 47 (1983); State v. White, 395 A.2d 1082, 1085 (Del. 1978); District Attorney for Suffolk District v. Watson, 381 Mass. 648, 411 N.E.2d 1274, 1286 (1980).
The California Supreme Court, in People v. Frank, 214 Cal.Rptr. 801, 38 Cal.3d 711, 700 P.2d 415, 424 n. 3 (1985), stated that “on an appeal from a judgment imposing the penalty of death, a technical insufficiency in the form of an objection will be disregarded and the entire record will be examined to determine if a miscarriage of justice resulted, [citation omitted] [This] rule is even more relevant today in light of the fact that death is ‘profoundly different from all other penalties.’” “Indeed” the court continues, “this court recently cited [the same rule] in support of its premise that in capital cases it will review errors even when defense counsel has failed to complain of them on appeal. (People v. Easley (1983) 34 Cal.3d 858, 864, 196 Cal.Rptr. 309, 671 P.2d 813).”
The Nevada Supreme Court, “consistent with the concept of heightened review” will examine errors not objected to previously. See Milligan v. State, 101 Nev. 627, 708 P.2d 289, 294, 296 (1985).
Of states which have expressly renounced or relaxed the contemporaneous objection rule in capital cases, South Carolina is in the vanguard with its in favorem vitae doctrine. That doctrine is the state’s only exception to the contemporaneous objection rule. State v. Vanderbilt, 287 S.C. 597, 340 S.E.2d 543, 544 (1986). See also State v. Adams, 279 S.C. 228, 306 S.E.2d 208, 215 (1983) (“we accept all argument in favorem vitae") and State v. Goolsby, 275 S.C. 110, 268 S.E.2d 31, 39 (1980).
Louisiana has a more practical reason for addressing errors to which no objection was made below. In State v. Hamilton, 478 So.2d 123, 127 n. 7 (La.1985), the court stated that it does so to “determine whether the error ‘rendered the result unreliable’ thus avoiding later consideration of the error in the context of ineffective assistance of counsel.” However, this motive was not mentioned in State v. Thomas, 427 So.2d 428, 433 (La.1982) in which it was written:
Because the penalty of death is qualitatively different from any other sentence, *1314 capital cases receive heightened scrutiny from this court and we conduct an independent review, regardless of the failure of defense counsel to object to possible error, to determine whether any improper factors contributed to the jury’s recommendation of the death penalty. State v. Sonnier, 379 So.2d 1336, 1371 (La.1980) (on rehearing); see State v. David, 425 So.2d 1241 (La.1983); State v. Watson, 423 So.2d 1130 (La.1982); see also State v. Culberth, 390 So.2d 847 (La.1980).
Mississippi is not alone in recognizing that the cumulative effect of errors may require reversal. In People v. Lucky, 41 Cal.3d 315, 221 Cal.Rptr. 880, 710 P.2d 959, 979 (1985), the California Supreme Court stated:
Each of these errors relates to a significant legal issue; each contains a small but real possibility of affecting the result. When the cumulative effect of all the errors is considered the likelihood that one or more played a part in leading the jury to return a death verdict impels the conclusion that the penalty procedures were clouded by substantial error.
The Tennessee Supreme Court looks at cumulative effect when analyzing instances of prosecutorial misconduct. State v. Buck, 670 S.W.2d 600, 609 (Tenn.1984).
As does Nevada. Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985). Florida has held that “we may look to the ‘cumulative effect’ of non objected to errors in determining whether substantial rights have been affected.” Pope v. Wainwright, 496 So.2d 798, 801 n. 1 (Fla.1986). See also State v. Martin, 101 N.M. 595, 686 P.2d 937, 943 (1984).
That this approach on the part of our sister states is not of recent vintage may be seen by a perusal of the cases discussed in my separate opinion in Hill v. State, 432 So.2d 427, 446-47 (Miss.1983) (Robertson, J., dissenting).
D.
But what is the juridical content of “death is different?” How ought judges administer that content in specific cases? We are not of one mind on the point, nor have we spoken with clarity.
One red herring may be quickly dispatched. The rules themselves do not change as the penalty of death is sought. Neither the contemporaneous objection rule nor any other rule of procedure or substance becomes metamorphosed into something more favorable to the capital defendant. Any contrary thought may be safely branded error.
Beyond its intuitive factual plausibility, death-is-different derives from two points about the nature of law. First, law is not an end but a means to the end of a society in which we should want to live. Features of that society I have thought widely accepted include unconditional reverence for life, procedural fairness and giving one the benefit of doubt in proportion to the consequences of error discounted by their probability. As law is a purposeful enterprise subjecting human conduct to the governance of rules, Warren County Board of Education v. Wilkinson, 500 So.2d 455, 460 (Miss.1986), so its rules should not be enforced so that their purpose be thwarted. Nor are courts mandated to apply, mechanically, the open textured rules that constitute our law to cases beyond the reach and concern of those purposes.
Second, rules of law being made by man are incapable of perfection. Because of our relative ignorance of fact and the relative indeterminacy of aim, Hart, The Concept of Law 125 (1961), we make rules which include that we should wish excluded and which exclude that we would prefer included. See Kennedy, Form and Substance In Private Law Adjudication, 89 Harv.L.Rev. 1685, 1695-97 (1976). The judicial process is not to be confused with Newton’s thermodynamics or Einstein’s gravity (although quantum mechanics does present an attractive physical analogue). Law makers and law appliers are prone to err, the consequences of which we may not responsibly ignore.
We are of necessity called to (imperfectly) sensitive application of the law. To be sure, as internal participants within the *1315 system we have no discretion other than as the law allows. Educational Placement Services v. Wilson, 487 So.2d 1316, 1318 (Miss.1986). But that which we have we should exercise by reference to systemic purposes, those undergirding the specific rule, the penumbra of doubt inherent in all rules, the penchant for indeterminacy in all of our rule making efforts, our bent for error in application, and the discounted gravity of consequences. Death is the harm in the harmless error calculus.
In death penalty cases we give flesh to these ideas in quite specific ways, as noted above. We consider trial errors for their cumulative impact. Russell v. State, 185 Miss. 464, 469, 189 So. 90, 91 (1939). We apply our plain error rule with less stinginess. Augustine v. State, 201 Miss. 731, 740, 29 So.2d 454 (1947). Enforcement of our contemporaneous objection rule is relaxed. Culberson v. State, 379 So.2d 499, 506 (Miss.1979); Toney v. State, 298 So.2d 716, 721 (Miss.1974). We resolve serious doubts in favor of the accused. Gambrell v. State, 92 Miss. 728, 736, 46 So. 138 (1908). And, as indicated above, we afford heightened scrutiny on appeal. Translated, what becomes harmless error in a case with less at stake becomes reversible error when the penalty is death, Irving v. State, 361 So.2d 1360, 1363 (Miss.1978), as death really is different.
III.
Today’s question is whether the contemporaneous objection rule should be enforced to bar Jones’ Batson claim. The relevant considerations[1] are these:
(1) The rule’s content excludes this case. Safecm-specific rights had no existence on April 3, 1985, though the law be regarded not as that which is but instead as a continuous process of becoming. The contemporaneous objection rule contemplates a realistic opportunity to assert a right which exists at that time.
(2) One purpose of the rule is the prevention of sandbagging. A litigant should not be allowed to lie silently in the bushes and strike only after his adversary has lost the opportunity for effective defense. But how may one sandbag an opponent regarding a rule the content of which is wholly unknown? Even if Jones and his counsel were disposed to sandbag (and exposure to the penalty of death certainly provides the incentive), the then-unforeseeable content of the Batson right made defense sandbagging quite simply impossible.
(3) The interest of judicial efficiency ordinarily mandates that a party have but one meaningful opportunity to assert a right. Where, as here, the trial judge on April 3, 1985, had no authority but to overrule any Batson claim, assuming counsel possessed the prescience to know how to assert one, no such meaningful opportunity has been afforded.
(4) The judicial efficiency interest ordinarily mandates a meaningful trial court opportunity to hear and finally resolve points, to the end that precious appellate judicial resources may be preserved. Timely assertion of rights in trial courts enables those courts to resolve matters and correct or avoid errors that might otherwise necessitate costly appellate review and retrials. Since the law as it existed on April 3, 1985, recognized rights not remotely resembling those fashioned a year later in Batson, this efficiency interest fails. The point is driven home by a brief look at Williams v. State, 507 So.2d 50, 52 (Miss.1987); and Harper v. State, 510 So.2d 530, 532 (Miss. 1987), where the said-to-be-necessary contemporaneous objection was made. The appellate result: remand for a Batson hearing, precisely the sort of inefficient result the rule is designed to prevent. Enforcement of the contemporaneous objection rule simply makes no sense in a change of law context. At the time the objection should have been made, April 3, 1985, the trial judge was prohibited by this Court’s reading of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) from taking any action which may have avoided the costly rehearing.[2]
(5) In Williams and Harper, we afforded the prosecution a “second bite” at the *1316 Batson apple on grounds it could not fairly be held to have foreseen what the Supreme Court would wrought. On what principle of even-handed justice may we do an about face and hold a similarly defaulting defendant now barred?
(6) If there be a reasonable probability that the prosecuting attorney in fact used peremptory challenges to exclude black persons from the jury in a Batson-violative manner, the systemic policies mentioned at the outset mandate that we find this out before Gregory Montecarlo Jones’ date with the state’s executioner.
We emphasize again that we do not change the content of the contemporaneous objection rule. Realism requires recognition that it is an open textured rule. I have found that the rule has no content mandating enforcement of the procedural bars against assertion of rights non-existent at the moment of procedural opportunity, nor does such enforcement enhance or vindicate any of the rules policies. If nothing else, this is an appropriate case for plain error treatment. See Rule 6(b), Miss.Sup. CtRules. For these reasons, staying within the rule, I would resolve the doubt for Jones, for death is different.
IV.
A less than proud page of this state’s history is an appropriate postscript. Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936) is one of the great cases in American criminal constitutional procedural jurisprudence. The case concerned confessions coerced from three black youths in a Kemper County murder case and has been ably chronicled by Richard C. Cortner in A “Scottsboro” Case In Mississippi (1986). The three had been convicted and sentenced to be hanged. This Court affirmed. Brown v. State, 173 Miss. 542, 158 So. 339, 161 So. 465 (1935).[3]
Before the Supreme Court of the United States, the State then as now invoked procedural bars and argued that the defendants should hang because their lawyer had not made the right objection at the right time — there really is nothing new under the sun. Cortner tells this story of oral argument in the Supreme Court.
William Maynard, [the Assistant Attorney General arguing for affirmance] pointed out that there had been no motion to exclude the confessions at the trial as required by Mississippi procedure, but he too was interrupted by one of the justices. Should Brown, Shields, and Ellington be condemned to die “because their lawyer neglected to say, ‘I object’?” the justice asked Maynard. Maynard was speechless in the face of the question, feeling that if he replied in the negative, he would be conceding his case, while if he answered “yes” to the question, he would appear to be heartless. Maynard instead of answering dropped his head in silence, and the justice said, “I thought so.”
Cortner, supra, at 129. The Supreme Court reversed and the rest is history.
PRATHER, SULLIVAN and ANDERSON, JJ., join in this dissent.

. See my dissenting opinion in Thomas v. State, supra, for further elaboration.

. The majority’s suggestion that Jones should have made a Swain objection is so much sophis *1316 try. First, the record reflects that on April 3, 1985, Jones didn't have a Swain objection. He did, however, have a Batson claim, but he had no way of knowing that fact. Second, prior to April 3, 1985, this Court had consistently rejected, if not ridiculed, Swain objections. See Belino v. State, 465 So.2d 1043, 1045 (Miss.1985) and other cases cited in my Thomas dissent. Third, the trial judge on his oath would have been obligated to overrule any Swain objection. So seen, the majority condemns Jones because of his lawyer’s failure to make a vain and wholly useless objection.

. On direct appeal Justice W.D. Anderson dissented, Brown, 173 Miss, at 560-63, 158 So. at
343-44, and on denial of suggestion of error, Justice V.A. Griffith issued an even more eloquent protest, Brown, 173 Miss, at 572-79, 161 So. at 470-72. Chief Justice Charles Evans Hughes once said:
“A dissent in a court of last resort is an appeal to the brooding spirit of the law, to the intelligence of a future day, when a later decision may possibly correct the error into which the dissenting judge believes the court to have been betrayed."
Hughes saw to it that Justices Anderson and Griffith did not have to wait long for their future day. Brown, 297 U.S. at 279-87, 56 S.Ct. at 462-66, 80 L.Ed. at 683-88.