525 So.2d 365 (1987)
West COLE
v.
STATE of Mississippi.
No. DP-58.
Supreme Court of Mississippi.
July 29, 1987.
Rehearing Denied June 3, 1988.
*366 Davey L. Tucker, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., and Donald G. Barlow, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
WALKER, C.J., for the Court:
West Cole was charged by indictment with the capital murder of Nettie Mae Whitten. At a bifurcated trial in the Circuit Court of the Second Judicial District of Hinds County, he was convicted of capital murder and sentenced to death. From that conviction and sentence he appeals, assigning eighteen (18) errors. Finding no reversible error, we affirm the conviction and sentence.
Between 7:00 and 7:30 a.m. on December 22, 1983, Sonny Gallman and his son Joey Richardson drove in separate vehicles to the Midway Grocery in Hinds County to purchase gasoline. As Richardson pumped the gasoline, Gallman walked into the store, expecting to find the owner Nettie Mae Whitten, whom he knew well. He saw her lying on the floor between the cash register and the meat counter, bleeding from gashes on her head. Her hands were bloody and bruised; one finger was almost completely severed. Though conscious, she was incoherent. Gallman telephoned his employer and asked him to call an ambulance and the police. He then covered Nettie Mae Whitten with a blanket and wiped the blood from her face. He noticed blood splattered on the floor, walls and ceiling.
Gallman's son was outside the store pumping gasoline. He noticed a large green car in the parking lot, and he saw a black man approximately fifty (50) years old, gray around the temples, exit from the back part of the Midway Grocery building, which was Nettie Mae Whitten's residence. Richardson, who was seventeen, walked to the store entrance, where his father stopped him and told him to go home.
*367 Investigator William Turcotte of the Hinds County Sheriff's Department was the first officer on the scene. He found an eighteen-inch lead pipe outside the entrance to the residence part of the building.
Nettie Mae Whitten was hospitalized; five (5) days later she died. An autopsy revealed that the cause of death was multiple blunt trauma to the cranium.
Investigation revealed that several witnesses had seen an automobile resembling West Cole's at the Midway Grocery that morning. The police questioned West Cole, who gave the following account in a written confession. Cole went to the Midway Grocery on the morning of December 22, 1983, and purchased 75¢ worth of luncheon meat. He returned to his car. While he was sitting in his car eating, a "white lady and a little girl" went into the store. After they left he went back into the store and reached for some money lying on top of the cash register. Nettie Mae Whitten grabbed Cole's hand and then picked up a knife in an effort to stop him. He shook the knife from her hand, picked up a length of pipe from the floor and struck the woman on the front of the head. She fell forward. He then struck her on the back of the head and left, dropping the pipe on the ground as he walked out the door.
West Cole was tried July 23-27, 1984, in the Circuit Court of the Second Judicial District of Hinds County. At the conclusion of the guilt phase, the jury returned a verdict of guilty of capital murder. The trial court then conducted the sentencing phase, after which the jury found that Cole should suffer the death penalty. Cole appeals, assigning eighteen (18) errors.

I. DID THE TRIAL COURT'S FAILURE TO GRANT A MISTRIAL OR A CONTINUANCE UPON THE PROSECUTION'S CALLING OF A SURPRISE WITNESS VIOLATE RULE 4.06 OF MISSISSIPPI CRIMINAL RULES OF CIRCUIT COURT PRACTICE AND DENY COLE DUE PROCESS OF LAW?
In his confession Cole mentioned "a white lady and a little girl" whom he had seen at the Midway Grocery the morning of the robbery and beating. Law enforcement officials immediately began a search for this potential witness, an effort which proved initially fruitless. During jury voir dire the prosecuting attorneys, unaware that police officers had located the witness, told defense counsel she would not be called.
When the prosecuting attorneys learned that the witness was available, they immediately notified defense counsel of 1) their intent to call her as a witness, and 2) the substance of her testimony. The following day, when the State called the witness, whose name was Tracy Pope, defense counsel objected, claiming surprise. The trial court then gave defense counsel the opportunity to interview the witness. After the interview, defense counsel renewed the objection but did not request a continuance. Overruling the objection, the trial court allowed the State to call Tracy Pope, who identified Cole as the man she had seen at Midway Grocery on December 22, 1983.
Cole argues on appeal that because Tracy Pope's name was not provided in response to a discovery request, the trial court erred in allowing her to testify. At the outset we note that the prosecuting attorneys diligently informed defense counsel of each development in the search for Tracy Pope. It is, nevertheless, apparent from the record that the police had located the witness two (2) days before trial began. Because the officer's knowledge is attributable to "the State," Fuselier v. State, 468 So.2d 45 (Miss. 1985), the failure to inform defense counsel that Pope would testify constituted, technically, a discovery violation.
When faced with a discovery violation, technical or otherwise, the trial court should follow this procedure:
1) Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.

*368 2) If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
3) If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.
Box v. State, 437 So.2d 19 (Miss. 1983) (Robertson, J., specially concurring). See also Griffin v. State, 504 So.2d 186 (Miss. 1987); Watts v. State, 492 So.2d 1281, 1290 (Miss. 1986); Hall v. State, 490 So.2d 858, 859 (Miss. 1986); Gray and Nations v. State, 487 So.2d 1304, 1313-14 (Miss. 1986); Cabello v. State, 471 So.2d 332, 343 (Miss. 1985), cert. denied, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986).
The trial court in the case at bar followed this procedure and afforded defense counsel an opportunity to interview the witness. After the interview, however, defense counsel made no request for a continuance. We will not put the trial court in error for failing to grant relief which was never requested. By failing to request a continuance, Cole waived any violation of Rule 4.06.

II. DID THE TRIAL COURT ERR IN PRECLUDING THE DEFENSE FROM ARGUING TO THE JURY THE VOLUNTARINESS OF COLE'S CONFESSION?
Cole moved to suppress his confession, alleging that it was not voluntarily given. After conducting a suppression hearing, the trial court admitted the confession into evidence. Cole argues on appeal that the trial court, after admitting the confession, improperly prohibited him from putting on evidence and argument as to its voluntariness. This argument is without merit.
Where the trial court has admitted a confession into evidence, it is still within the province of the jury to determine whether the statement is true and voluntary, and what weight and credibility should be accorded to it. Wilson v. State, 451 So.2d 724 (Miss. 1984); Rhone v. State, 254 So.2d 750 (Miss. 1971). Thus, once a confession has been admitted, "either party has a right to introduce before the jury the same evidence which was submitted [at the suppression hearing] as well as any other evidence relative to the weight and credibility of the confession." Rhone, 254 So.2d at 754.
The record in the case at bar simply does not support Cole's claim that he was prevented from arguing voluntariness to the jury. We note the following areas explored by defense counsel in the presence of the jury: 1) whether Cole was tired when he confessed, 2) whether, at the time he confessed, Cole had been at the sheriff's office all day, 3) whether Cole was separated from his family during questioning, and 4) whether Cole had only a third grade education.
During cross-examination of one of the officers present when Cole confessed, defense counsel questioned the officer extensively about the circumstances of the interrogation, prompting the following exchange:
BY THE DISTRICT ATTORNEY:
Your Honor, this statement has been introduced; it has been ruled admissible; and we object to any further questioning in this regard.
BY THE COURT:
Let's move along, Mr. Tucker.
We note that the trial court did not sustain the objection, but instead told defense counsel to "move along," an instruction which we deem eminently appropriate, since defense counsel had consumed nine (9) pages of the record questioning the officer about the exact time the confession was given. Moreover, the record reveals that after the objection defense counsel continued to cross-examine the officer about voluntariness, asking 1) whether Cole was threatened during questioning, and 2) whether Cole asked for his high *369 blood pressure medicine during questioning.
Cole also argues on appeal that the trial court prevented him from challenging the confession during closing argument. The record reveals, however, that the trial court simply told defense counsel not to argue outside the record.
Having reviewed the record thoroughly, we are of the opinion that Cole was not prevented from challenging the voluntariness of the confession and this assignment of error is without merit.

III. DID PROSECUTORIAL MISCONDUCT RESULT IN A VIOLATION OF COLE'S CONSTITUTIONAL RIGHTS?
Cole argues that his constitutional rights were violated in that the prosecution 1) used hypothetical questions during voir dire to force jurors to commit themselves to voting for the death penalty, and then compounded the error by referring to those commitments during closing argument, 2) mentioned the possibility of parole, and 3) asked the jury, during final argument, to disregard Cole's age at the time of the crime (58), which is enumerated in the statute as a mitigating circumstance. Miss. Code Ann. § 99-19-101(6) (Supp. 1986) (effective 1983).
Of the numerous instances of alleged prosecutorial misconduct, Cole objected to only three (3). Counsel may not sit idly by making no protest as objectionable evidence is admitted, and then raise the issue for the first time on appeal. If no contemporaneous objection is made, the error, if any, is waived. This rule's applicability is not diminished in a capital case. Irving v. State, 498 So.2d 305 (Miss. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987); Johnson v. State, 477 So.2d 196 (Miss. 1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986); In re Hill, 460 So.2d 792 (Miss. 1984); Hill v. State, 432 So.2d 427 (Miss.), cert. denied, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983).
Defense counsel did object to three (3) instances of alleged prosecutorial misconduct, but on each of the three (3) points, he failed to obtain a ruling from the trial court. When the district attorney told jurors, during voir dire, that they should not be influenced by sympathy, defense counsel objected, but no ruling on the objection appears in the record. Similarly, when defense counsel, during voir dire, told potential jurors they could consider mercy in deciding the case, the district attorney objected. Instead of ruling on the objection, the trial court once again gave the rather cryptic instruction, "Move on." Finally, when the district attorney reminded jurors during closing argument that they had promised him they would not "look for an excuse," defense counsel objected, but did not obtain a ruling from the trial court. Because the record includes no ruling by the trial court on any of these objections, they are waived. Hemmingway v. State, 483 So.2d 1335 (Miss. 1986); Cummings v. State, 465 So.2d 993 (Miss. 1985).

IV. WERE EXTRANEOUS FACTORS INTRODUCED AT THE SENTENCING PHASE IN VIOLATION OF COLE'S CONSTITUTIONAL RIGHTS?
This assignment of error involves three (3) instances in which, according to Cole, the prosecution elicited inadmissible, prejudicial testimony during the sentencing phase.
First, Cole complains of the prosecution's attempt to introduce his notice of alibi during cross-examination of Purvis Davis in the sentencing phase of the trial. Davis, who was Cole's father-in-law and landlord, testified that Cole 1) helped him with household tasks, 2) went to church every Sunday, 3) was a Mason, 4) helped care for his severely disabled nephew, and 5) loved his family and treated them well. After defense counsel questioned Davis, the district attorney inexplicably began his cross-examination with this question: "Mr. Davis, would you be the same Purvis Davis that this defendant filed a paper with the Court that said he was with you all night on the night before the murder?" Over *370 Cole's objection, the district attorney elicited from Davis that Cole had not been with him on the night before the murder  testimony which was in conflict with Cole's notice of alibi. The district attorney's intent was then clarified by his next question, "So, you're not telling us how truthful he is, are you?"
This evidence was not admissible to rebut Davis' character testimony. The defense had made no effort to prove Cole's truthfulness as a mitigating circumstance. Had the evidence been used to rebut a specific mitigating factor, then we would reach the issue which confronted us in Ray v. State, 503 So.2d 222 (Miss. 1987). The evidence in this case, however, was offered to prove a character trait which Cole had not put in issue. As the district attorney himself stated, "[Davis was] not telling [the jury] how truthful [Cole] was." Indeed, no one claimed that Cole was truthful, and for that very reason, any attempt to prove the contrary was improper.
The error does not, however, require reversal. The instructions did not allow the jury to consider untruthfulness as an aggravating circumstance, nor do we believe the jury sentenced Cole to death for lying, a transgression which fades into insignificance when compared with the aggravating circumstances which the jury did find:
1) the capital murder was committed by a person under sentence of imprisonment,
2) the defendant was previously convicted of another capital offense or a felony involving the use or threat of violence to the person,
3) the capital murder was committed intentionally while the defendant was engaged in the commission of robbery, and was committed for pecuniary gain, and
4) the capital murder was especially heinous, atrocious or cruel.
Cole also argues that the trial court erred in allowing the State, during the sentencing phase, to put on evidence 1) that he had declared bankruptcy, and 2) that he was separated from his wife. We conclude, however, that these two (2) items of evidence were offered, respectively, to rebut 1) Davis' testimony that Cole had a steady job, and 2) Davis' testimony that Cole loved his family. Such rebuttal evidence, offered to negate testimony about specific mitigating factors, is admissible. Stringer v. State, 500 So.2d 928, 941 (Miss. 1986); Leatherwood v. State, 435 So.2d 645, 653 (Miss. 1983), cert. denied, 465 U.S. 1084, 104 S.Ct. 1455, 79 L.Ed.2d 772 (1984).

V. DID THE TRIAL COURT ERR IN ALLOWING THE JURY, DURING THE SENTENCING PHASE, TO CONSIDER DOCUMENTARY EVIDENCE WHICH THE STATE HAD NOT DISCLOSED?
During the sentencing phase, the State introduced two (2) judgments of conviction as evidence of an aggravating circumstance. Cole objected on the basis that the documents had not been provided to him in discovery. Again, however, Cole failed to request a continuance, thereby waiving any discovery violation. Attempting to excuse this omission, Cole argues on appeal that such a request would have been futile, since the trial court had stated that no more continuances would be granted to either side.
Counsel must make a record, regardless of the trial court's apparent unwillingness to rule in counsel's favor. We will not reverse the trial court for failing to grant a continuance which was never requested. Griffin, 504 So.2d 186 (Miss. 1987); Cabello, 471 So.2d 332 (Miss. 1985). Moreover, we note that the trial court's reluctance to grant a continuance did not deter defense counsel from requesting one later in the sentencing phase, when defense witnesses were unavailable.

VI. DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY THAT THEY SHOULD NOT CONSIDER CONVICTING COLE OF SIMPLE MURDER UNLESS THEY FOUND HIM NOT GUILTY OF CAPITAL MURDER?
Not only did defense counsel fail to object to this instruction, he stated affirmatively, *371 "Your Honor, we don't have any objection to that. I think we have got one similar to that." Cole waived this issue by failing to object at trial. Shelton v. State, 445 So.2d 844 (Miss. 1984); Pickett v. State, 443 So.2d 796 (Miss. 1983); Sup.Ct. Rule 42.

VII. DID THE TRIAL COURT ERR IN LIMITING COLE'S ARGUMENT AT THE SENTENCING PHASE OF THE TRIAL?
Although Cole did not testify in his own behalf, he did address the jury by making part of the defense's closing argument at the sentencing phase. The trial court instructed Cole not to claim innocence, since that issue had already been determined by the jury.
Cole argues on appeal that this ruling prevented him from offering as a mitigating factor whimsical or residual doubt, which might have lingered in the minds of jurors even after they had found him guilty beyond a reasonable doubt.
The sentencer in a capital case may not be precluded from considering, in mitigation, any aspect of the defendant's character or record or any circumstance of the offense. Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 873 (1978); Jackson v. State, 337 So.2d 1242 (Miss. 1976). This rule does not limit the trial court's power to exclude from the sentencing phase, as irrelevant, evidence not bearing on the defendant's character or prior record, or the circumstances of the offense. Lockett, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 873.
The United States Supreme Court, in addressing the arguments in favor of unitary juries in capital cases, stated that the defendant in a capital case might benefit at the sentencing phase of the trial from the jury's "residual doubts" about his guilt. The Court noted without comment that some states, though using unitary juries in capital trials, do not allow the defendant to argue residual or whimsical doubt at the sentencing phase. Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).
We need not determine whether residual or whimsical doubt is a relevant mitigating factor which the defendant in a capital case may argue to the jury at the sentencing phase of the trial. In the case at bar, defense counsel delivered his closing argument at the sentencing phase without objection or interruption. He made no effort to argue residual doubt, although he did make this statement:
Finally, the Court has told you as far as mitigating circumstances that you may consider any other matter, any other aspect of the defendant's character [or] record and any other circumstance of the offense brought you during the trial of this case which you the jury deem to be mitigating on behalf of the defendant. That gives you the right to consider any phase of this trial, any evidence, anything considered as a mitigating reason for not giving him death.

It was after defense counsel had completed his argument, but before Cole began his statement, that the trial court instructed Cole not to argue guilt or innocence. Cole then spoke six (6) sentences, asking in essence that the jury have mercy on him and spare his life.
The record contains no indication that, but for the trial court's admonition, Cole would have argued residual doubt. Although defense counsel made his closing argument before the trial court "limited" Cole, defense counsel made no reference to residual doubt, nor did he challenge the trial court's instruction to Cole. This assignment of error is without merit.

VIII. DID THE TRIAL COURT ERR IN REFUSING, DURING THE SENTENCING PHASE, TO GRANT A CONTINUANCE IN ORDER FOR COLE TO SECURE TWO (2) UNAVAILABLE WITNESSES?
After the trial had begun, Cole moved for a continuance, claiming that two (2) of the witnesses he intended to call at the *372 sentencing phase were unavailable. He assigns as error the trial court's denial of that motion.
Motions for continuance in criminal trials are governed by Miss. Code Ann. § 99-15-29 (1972), which provides, in part, as follows:
On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done.
It is in light of these requirements that we consider the showing which Cole made in support of his motion for continuance to secure the attendance of these two (2) witnesses.
Nathaniel Booker was a minister who was to testify regarding Cole's religious beliefs. Instead of submitting the affidavit required by statute, Cole's counsel simply stated, in his motion ore tenus, that Booker was to testify about Cole's religious beliefs, but that he was conducting a funeral service and could not be present to testify. Not only did defense counsel fail to make any showing of due diligence to procure Booker's presence, on the contrary, defense counsel affirmatively stated that he had not sought a subpoena instanter for Booker, since he knew Booker was conducting a funeral.
Lurien Bennett was Cole's former landlady. She submitted to the court a letter in which she stated that Cole was a helpful, hardworking, compassionate man. Defense counsel, however, did not make any showing of due diligence to procure this witness's presence. The record contains a letter from Lurien Bennett's physician stating that she had a pacemaker and was taking medications which required careful attention to her dosage schedule. That letter, however, in no way indicated that the witness was unable to testify; it simply stated that she was taking medication and required attention. Nor did defense counsel make any other showing to the effect that Bennett was unable to testify. Even if we were to assume that Bennett's medical condition prevented her from testifying, there was no indication that her condition would improve to the extent that she later would be able to testify.
Because Cole's showing fell far short of that required by the statute, we hold that the trial court did not abuse its discretion in denying Cole's motion for a continuance. See Johnson v. State, 477 So.2d 196 (Miss. 1985).

IX. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE COPIES OF COUNTY COURT RECORDS CONTAINING 1) JUDGMENTS OF CONVICTION FOR GRAND LARCENY AND SIMPLE ROBBERY, AND 2) THE TRANSCRIPT OF THE SENTENCING HEARING ON THE CHARGE OF GRAND LARCENY?
During the sentencing phase of the trial, the State put the following documents into evidence: 1) judgment of conviction for manslaughter, 2) judgment of conviction for simple robbery, 3) judgment of conviction for attempted rape, 4) transcript on sentencing for grand larceny, and 5) judgment of conviction for unspecified offense.
On appeal Cole argues that the convictions of grand larceny and simple robbery were inadmissible because they were irrelevant to the statutory aggravating circumstances, i.e., that the capital murder was committed by a person under sentence of imprisonment, and that the defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person. Miss. Code Ann. § 99-19-101(5) (Supp. 1986) (effective March 29, 1983). Cole also argues on appeal that the transcript of the sentencing proceeding prejudiced him in that it contained a plea for mercy by the attorney then representing Cole. In his brief Cole *373 claims that this evidence "fed the prosecutor's argument that here again the appellant was asking for mercy and another chance as he has done many times before... ."
Defense counsel made neither of these arguments at trial. His only objections to the documents were 1) that they had not been provided to him in discovery, and 2) that no sufficient foundation was laid for their admission. Having failed to make the present objections at trial, Cole may not raise them for the first time on appeal. Irving v. State, 498 So.2d 305; Johnson v. State, 477 So.2d 196; In re Hill, 460 So.2d 792; Hill v. State, 432 So.2d 427.

X. DID THE TRIAL COURT ERR IN REFUSING TO SUPPRESS TRACY POPE'S IN-COURT IDENTIFICATION OF COLE?
At trial Cole moved to suppress an in-COURT IDENTIFICATION BY Tracy Pope, who had seen him at Midway Grocery the morning of the crime. He claimed that the in-court identification was the product of an impermissibly suggestive photographic show-up, in which Pope selected Cole's photograph after seeing him on television.
At the suppression hearing, Tracy Pope testified that although she had seen a television broadcast showing Cole, she had seen only Cole's back as he entered a car. She further testified that seeing the film on television did not help her to identify him, and that the police had not suggested to her which photograph she should pick. Because the record contains no indication that the photographic show-up was impermissibly suggestive, we do not reach the issue whether the in-court identification was a product of the out-of-court photographic show-up. Arteigapiloto v. State, 496 So.2d 681 (Miss. 1986); Hanner v. State, 465 So.2d 306 (Miss. 1985). The trial court did not err in denying Cole's motion to suppress.

XI. DID THE TRIAL COURT ERR IN EXCLUDING CERTAIN MITIGATING EVIDENCE AT THE SENTENCING PHASE OF THE TRIAL?
Twice during the sentencing phase, the trial court excluded, as hearsay, the contents of certain conversations. In the first instance Purvis Davis attempted to testify about Cole's statements regarding religion; the trial court instructed him not to reveal the content of any conversation. In the second instance Cole's sister attempted to relate Cole's statements about the death of her child, Cole's disabled nephew. Again the trial court instructed the witness not to relate the content of any conversation.
Although Cole's failure to make an offer of proof precludes a positive determination, it is unlikely that these statements would have constituted hearsay. A statement offered to prove something other than the truth of the matter asserted is not hearsay. Slay v. Illinois Central Gulf Railroad Co., 511 So.2d 875 (Miss. 1987); Bridgeforth v. State, 498 So.2d 796 (Miss. 1986); Page v. State, 495 So.2d 436 (Miss. 1986). Moreover, under certain rare circumstances, the due process clause may require that the hearsay rule not be applied mechanistically to defeat the ends of justice. Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979); Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).
In the case at bar, however, Cole's claim fails for two (2) reasons. First, he made no offer of proof at trial. No error may be predicated on the exclusion of evidence unless an offer of proof is made. Gates v. State, 484 So.2d 1002 (Miss. 1986); King v. State, 374 So.2d 808 (Miss. 1979), cert. denied, 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980). As noted above, Cole's failure to make an offer of proof prevents this Court from determining with certainty whether the excluded testimony constituted hearsay. Second, Cole has not made any showing of prejudice. Though precluded from relating conversations, the witnesses testified that Cole went to church, that he enjoyed church services, that he loved everyone, and that he was upset when his nephew died. Assuming arguendo that the testimony should have been admitted, we find beyond a reasonable doubt that any error resulting from its exclusion was harmless. Gray v. State, 472 So.2d 409 (Miss. 1985), reversed on other *374 grounds, ___ U.S. ___, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987).

XII. DID THE TRIAL COURT ERR IN ALLOWING THE JURY TO CONSIDER AS AN AGGRAVATING CIRCUMSTANCE THAT THE CAPITAL MURDER WAS COMMITTED DURING A ROBBERY?
Cole argues on appeal that because robbery was the underlying felony on which the capital murder charge was based, and because the jury had convicted him of that charge in the guilt phase, he was required to disprove this aggravating circumstance at the sentencing phase. We have repeatedly rejected this argument. Irving v. State, 498 So.2d 305; Smith v. State, 419 So.2d 563 (Miss. 1982). This assignment of error is without merit.

XIII. DID THE TRIAL COURT ERR IN ALLOWING THE JURY TO CONSIDER AS AN AGGRAVATING CIRCUMSTANCE THAT THE CAPITAL MURDER WAS ESPECIALLY HEINOUS, ATROCIOUS AND CRUEL?
Cole argues 1) that this language is overly broad, 2) that the trial court should have instructed the jury as to what the phrase meant and how it had been applied in previous cases, and 3) that the evidence was insufficient to make out a jury issue on this aggravating circumstance. Cole did not object on these grounds at trial. He has thus waived the issues and may not raise them on appeal.

XIV. DID THE SENTENCING INSTRUCTION, ALONG WITH THE STATUTE ON WHICH IT WAS BASED, SHIFT THE BURDEN OF PROOF TO COLE IN THAT NEITHER THE INSTRUCTION NOR THE STATUTE CONTAINED STANDARDS FOR THE JURY TO USE IN WEIGHING THE AGGRAVATING AND MITIGATING CIRCUMSTANCES?
Cole waived this issue by failing to object at trial.

XV. DID THE "DEATH QUALIFICATION" OF THE JURY DENY COLE AN IMPARTIAL JURY FROM A CROSS-SECTION OF THE COMMUNITY?
Cole argues that the exclusion of jurors who would not consider the death penalty under any circumstances created a conviction-prone jury in the guilt phase. This argument has been rejected by both the United States Supreme Court and this Court. Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); Irving v. State, 498 So.2d 305 (Miss. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1086, 95 L.Ed.2d 826 (1987). This assignment of error is without merit.

XVI. DID THE TRIAL COURT ERR IN FAILING TO INSTRUCT THE JURY THAT THEY COULD SENTENCE COLE TO LIFE REGARDLESS OF THE ABSENCE OF MITIGATING FACTORS OR THE WEIGHT OF THE AGGRAVATING OR MITIGATING CIRCUMSTANCES?
We have repeatedly rejected this argument. Wiley v. State, 484 So.2d 339 (Miss.), cert. denied, ___ U.S. ___, 107 S.Ct. 304, 93 L.Ed.2d 278 (1986); Irving v. State, 441 So.2d 846 (Miss.), cert. denied, 470 U.S. 1059, 105 S.Ct. 1774, 84 L.Ed.2d 834 (1985). The assignment of error is without merit.

XVII. DID THE TRIAL COURT ERR IN FAILING TO DEFINE AND DESCRIBE THE NATURE AND FUNCTION OF MITIGATING CIRCUMSTANCES?
The following is Instruction D-5, the trial court's refusal of which Cole assigns as error:
If you find the existence of any one of the aggravating circumstances, then you must weigh and consider any mitigating circumstances.

*375 A mitigating circumstance is any fact relating to West Cole's character, education, environment, mentality or life or any aspect of the crime itself which may be considered extenuating or reducing the moral culpability of the killing or making the defendant less deserving of the extreme punishment of death. If (sic) offering mitigating evidence, the defendant is not suggesting that the crime is justified or excusable. Mitigating circumstances are those circumstances which offer a partial explanation as to why and how the crime occurred and which tend to justify the penalty of life imprisonment.
While the weight which you give to a particular mitigating circumstance is a matter for your moral, factual, and legal judgment, you must consider all evidence of mitigation. You may not refuse to consider any evidence of mitigation and thereby give it no weight.
We rejected this argument in Booker v. State, 449 So.2d 209, 218-19 (Miss. 1984), vacated on other grounds, 472 U.S. 1023, 105 S.Ct. 3493, 87 L.Ed.2d 626 (1985). We are of the opinion that the sentencing instruction in the case at bar, which tracked the language of the statute, appropriately channelled the sentencer's discretion. King v. State, 421 So.2d 1009 (Miss. 1982), cert. denied, 461 U.S. 919, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983).

XVIII. WAS COLE'S DEATH SENTENCE THE RESULT OF A PATTERN OF DISCRIMINATION, BASED ON RACE, SEX, AGE AND PROVERTY, WHICH DISCRIMINATION HAS BEEN PRACTICED BY MISSISSIPPI PROSECUTORS, COURTS, JURIES AND GOVERNORS?
Cole did not raise this issue in the trial court, nor do we find in the record any factual basis for this claim. Therefore, it is waived.
Moreover, the United States Supreme Court has held that a defendant advancing such a claim must prove that the decision-maker in his case acted with a discriminatory purpose. McCleskey v. Kemp, ___ U.S. ___, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). This assignment of error is without merit.
...
Having carefully reviewed the record, we conclude that Cole's death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor; that the evidence supports the jury's finding of four (4) statutory aggravating circumstances; and that the sentence is not excessive or disproportionate to the penalty imposed in similar cases.[1]
Finding no reversible error, we affirm both the conviction of capital murder and the sentence of death. The fixing of the date of execution is held in abeyance until the defendant, West Cole, has exhausted his remedies at law.
AFFIRMED.
ROY NOBLE LEE, P.J., and ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.
HAWKINS, P.J., and SULLIVAN, J., dissent.
DAN M. LEE, J., concurs in result only.
ROBERTSON, PRATHER, and ANDERSON, JJ., concur by separate written opinion in which DAN M. LEE, J., joins parts I, II, III, and VI only.

APPENDIX "A"

DEATH CASES AFFIRMED BY THIS COURT:
Wiley v. State, 484 So.2d 339 (Miss. 1986).
Johnson v. State, 477 So.2d 196 (Miss. 1985).
Gray v. State, 472 So.2d 409 (Miss. 1985).
Cabello v. State, 471 So.2d 332 (Miss. 1985).
Jordan v. State, 464 So.2d 475 (Miss. 1985).
Wilcher v. State, 455 So.2d 727 (Miss. 1984).
Billiot v. State, 454 So.2d 445 (Miss. 1984).
*376 Stringer v. State, 454 So.2d 468 (Miss. 1984).
Dufour v. State, 453 So.2d 337 (Miss. 1984).
Neal v. State, 451 So.2d 743 (Miss. 1984).
Booker v. State, 449 So.2d 209 (Miss. 1984).
Wilcher v. State, 448 So.2d 927 (Miss. 1984).
Caldwell v. State, 443 So.2d 806 (Miss. 1983).
Irving v. State, 441 So.2d 846 (Miss. 1983).
Tokman v. State, 435 So.2d 664 (Miss. 1983).
Leatherwood v. State, 435 So.2d 645 (Miss. 1983).
Hill v. State, 432 So.2d 427 (Miss. 1983).
Pruett v. State, 431 So.2d 1101 (Miss. 1983).
Gilliard v. State, 428 So.2d 576 (Miss. 1983).
Evans v. State, 422 So.2d 737 (Miss. 1982).
King v. State, 421 So.2d 1009 (Miss. 1982).
Wheat v. State, 420 So.2d 229 (Miss. 1982).
Smith v. State, 419 So.2d 563 (Miss. 1982).
Johnson v. State, 416 So.2d 383 (Miss. 1982).
Edwards v. State, 413 So.2d 1007 (Miss. 1982).
Bullock v. State, 391 So.2d 601 (Miss. 1980).
Reddix v. State, 381 So.2d 999 (Miss. 1980).
Jones v. State, 381 So.2d 983 (Miss. 1980).
Culberson v. State, 379 So.2d 499 (Miss. 1979).
Gray v. State, 375 So.2d 994 (Miss. 1979).
Jordan v. State, 365 So.2d 1198 (Miss. 1978).
Voyles v. State, 362 So.2d 1236 (Miss. 1978).
Irving v. State, 361 So.2d 1360 (Miss. 1978).
Washington v. State, 361 So.2d 61 (Miss. 1978).
Bell v. State, 360 So.2d 1206 (Miss. 1978).

DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCE PHASE:
Foster v. State, 508 So.2d 1111 (Miss. 1987).
Smith v. State, 499 So.2d 750 (Miss. 1986).
West v. State, 485 So.2d 681 (Miss. 1985).
Fisher v. State, 481 So.2d 203 (Miss. 1985).
Johnson v. State, 476 So.2d 1195 (Miss. 1985).
Fuselier v. State, 468 So.2d 45 (Miss. 1985).
West v. State, 463 So.2d 1048 (Miss. 1985).
Jones v. State, 461 So.2d 686 (Miss. 1984).
Moffett v. State, 456 So.2d 714 (Miss. 1984).
Lanier v. State, 450 So.2d 69 (Miss. 1984).
Laney v. State, 421 So.2d 1216 (Miss. 1982).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT:
Edwards v. State, 441 So.2d 84 (Miss. 1983).
Dycus v. State, 440 So.2d 246 (Miss. 1983).
Coleman v. State, 378 So.2d 640 (Miss. 1979).

DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY:
Stringer v. State, 500 So.2d 928 (Miss. 1986).
Pinkton v. State, 481 So.2d 306 (Miss. 1985).
Mhoon v. State, 464 So.2d 77 (Miss. 1985).
Cannaday v. State, 455 So.2d 713 (Miss. 1984).
Wiley v. State, 449 So.2d 756 (Miss. 1984).
Williams v. State, 445 So.2d 798 (Miss. 1984).
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
In my view reversible error was committed in permitting the witness Tracy Pope to testify as was done in this case.
When the State has been requested under Rule 4.06 of the Criminal Rules to furnish the names of witnesses they propose to offer in chief at trial, it can occasionally happen, as may have occurred in this case, the prosecution itself does not learn the identity of the witness until the trial is in progress. In such circumstances the prosecution obviously cannot be faulted for failure to disclose the identity prior to trial.
*377 The prosecution is, however, under a solemn duty, upon discovering the identity of such witness to promptly notify defense counsel and the circuit judge. If there is any objection, the circuit judge should then conduct a hearing in chambers to determine the appropriate way to handle the matter.
While I believe the procedure outlined by the majority will be helpful in most cases, it does not fit this case.
Trial in this case began on Monday, July 23, 1984. The jury voir dire lasted two days. During the questioning of the jury, defense counsel asked the prospective jurors about certain witnesses which the State intended to call, and if any of the jurors knew them. The record reveals that defense counsel asked one of the prosecuting attorneys (out of the hearing of the jury, however) if the State intended to call a Mrs. Tracy Pope.
BY MR. TUCKER:
Okay, the last one  (Aside to Ms. Whitten) is this Tracy Pope? Is that beared [sic] out yet? Are you going to use her?
BY MS. WHITTEN:
Nunh  uh. [sic] [Personal remarks between Ms. Whitten and Mr. Tucker out of hearing of reporter.]
BY MR. TUCKER:
Okay. Would you mark that in the record: that they are not going to call Tracy Pope.
(Vol. III, p. 548.)
In his opening statement to the jury panel, defense counsel asked the jury to consider whether Cole in fact was even present at this particular place at this particular time.
I think the evidence will show to you without question that the State's case is going to fail miserably in placing West Cole out there.
And further:
They don't have any witnesses who saw West Cole out there.
(Vol. IV, 576-577.)
On Thursday, July 26, the State called Mrs. Pope as a witness, and defense counsel objected to her testifying. The record contains the following discourse:
BY MR. TUCKER:
If it please the Court, we object to her testifying to anything at this time. Pursuant to our discovery her name was not provided in our witness list. We have not had time to interview her. We've just this morning been advised that she was to testify, and we were advised as late as yesterday that she was not to testify. We'd like permission to interview her prior to any testimony [sic] on her part.
BY MS. WHITTEN:
Your Honor, for the record we'd like to state that the State only discovered the existence of this witness, although we had been attempting to locate her the entire time since this crime occurred, her existence and her name were located and ascertained by the State only two days ago, at which time during the voir dire we informed the Defense Attorney that if we could locate her we were going to put her on. Those efforts continued to prove unsuccessful, at which time we informed him of that and we would not call her. And I told him as soon as we found out that she would be available that we intended to put her on the stand, and I also gave him the veritable substance of her testimony on direct. So I don't think that he can claim any unfair surprise.
BY MR. TUCKER:
If the Court please, we'd like to interview her prior to her testimony.
BY MS. WHITTEN:
Your Honor, we state for the record also that under Discovery Rule 4.06, Defense Attorney is only entitled the names and address of witnesses, and there's absolutely no compulsion of the Court which can force this witness to be interviewed by opposing counsel.
BY THE COURT:
I understand that; but of course I can make her available. My question is, was *378 the witness present this morning in the Courthouse?
[By Mr. Peters:]
Q. When did you get here, Tracy?
A. About 9:30.
Q. And as soon as you came in, what happened?
A. You interviewed me.
Q. And then what happened as soon as we had the first chance? You came up here?
A. We came up here.
Q. All right.
BY THE COURT:
Ladies and Gentlemen of the Jury, if you would step to the jury room at this time. [The jury was excused, and the following proceedings were had in their absence:]
BY MR. PETERS:
If it please the Court, this is her husband, Gary Pope. At the time I talked with her, he was present while I was talking her, and I'd like the Court to advise her that he can be present when the Defense Attorney talks to her; that I can be present when the Defense Attorney talks to her; or that she doesn't have to talk to him, whatever her choice is.
BY THE COURT:
That's correct.
BY MR. TUCKER:
Who is her husband?
BY MR. PETERS:
Here.
BY THE COURT:
The Defense Attorney would like to talk to you prior to your testifying. You may talk with him if you choose to do so. You may have anyone present with you at the time you talk to him if you would like to do so. If you choose not to talk with him, that's your prerogative. The Court is not going to instruct you one way or the other. I'm just going to make you available to Defense Attorney, and it's up to you to what you want to do.
BY MRS. POPE:
I'd rather not.
BY MR. TUCKER:
Q. Would you  let me ask you this. Would you mind if you and your husband and I could go in this room back here and just talk for a few minutes so I can determine exactly a few things of why I haven't talked to you before now or why you haven't been around, the same things that the District Attorney obviously talked to you about? Would you mind doing that?
A. No.
BY MR. TUCKER:
[To Mr. Pope] Do you mind if she does that? I mean you could be with her.
[Husband nodded.]
She's consented, Your Honor.
BY THE COURT:
You can go in that office there. [Mr. and Mrs. Pope and Mr. Tucker went into conference room.]
BY MR. PETERS:
Would you let the record reflect she's talking to him.
[Trial was recessed briefly, and then continued as follows:]
BY THE COURT:
All right, let the record reflect that Defense Counsel has now had an opportunity to personally interview this witness before allowing the witness to testify.
If you would, ask the jury, Mr. Boggan, to return to the jury box.
BY MR. TUCKER:
We would make another objection when the jury gets back.
[The jury returned, and the following proceedings were had in their presence:]
BY THE COURT:
All right, Mr. Tucker, you said you object?
BY MR. TUCKER:
If it please the Court, we renew our objection previously made as to this witness testifying. We were not provided with any information or had time to prepare for any defense to her testimony. The State has known about this witness all week, and we should have been provided *379 prior notice of this so we could prepare for it; and we therefore claim surprise.
BY MS. WHITTEN:
Your Honor, at this time for the record we would renew our response of last time as to the time and dates Defense Counsel was informed of this, and would state that the first time anything even occurred approximately several months ago about the issue of whether there was a woman present, it appears in the confession of West Cole.
BY THE COURT:
Also let me ask you, did you indicate that if you found the witness you would call the witness?
BY MS. WHITTEN:
Yes, sir, we did. And I did tell Mr. Tucker the exact nature of her direct testimony. I'd also like the record to reflect that he has interviewed this witness for some twenty to twenty-five minutes.
BY MR. TUCKER:
When did you say you found her?
BY MS. WHITTEN:
Yesterday.
BY THE COURT:
All right, objection will be overruled. The witness may testify.
(Vol. V, pp. 945-950.)
During her testimony Mrs. Pope said that law enforcement officers first approached her on the previous Tuesday morning around 10:30 a.m. They asked her if she could identify Cole, and she gave them a description, but she was not sure she could identify him.
The officers returned on Wednesday afternoon around 6:30 p.m., at which time she identified Cole's photograph from a group of pictures.
Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice states in pertinent part:
The prosecution shall disclose to each defendant or his attorney, and permit him to inspect, copy, test, and photograph upon and request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial. [Emphasis added]
This Court has had to address Rule 4.06 violations in various factual settings. We have reversed in the following cases:

Morris v. State, 436 So.2d 1381 (Miss. 1983), and Tolbert v. State, 441 So.2d 1374 (Miss. 1983), failure to furnish defendant with copies of his of statements.

Harris v. State, 446 So.2d 585 (Miss. 1984), failure to produce pistol used in shooting for inspection by defense.

Fuselier v. State, 468 So.2d 45 (Miss. 1985), failure to furnish defendant copy of statement of companion in commission of crime.

Barnes v. State, 471 So.2d 1218 (Miss. 1985), failure to furnish defendant with copy of statements given to officers by principal state witness.

Hentz v. State, 489 So.2d 1386 (Miss. 1986), refusal to furnish non-exculpatory statement. Cooley v. State, 495 So.2d 1362 (Miss. 1986).

Foster v. State, 493 So.2d 1304 (Miss. 1986), failure to furnish defendant with copy of crime lab report, even though no showing of relevancy to case.
It goes without saying that no defendant will be permitted to assert a Rule 4.06 violation when he failed to make the appropriate request therefor.
The closest case factually to this case is Box v. State, 437 So.2d 19 (Miss. 1983). In investigating the case, one of the accomplices told police officers that they used Michael Dean Water's automobile to commit the robbery. No one followed up on this lead until the evening before trial when the prosecuting attorneys learned of the importance of Waters' testimony. The next day, over the defense objection, Waters testified as a witness for the State. In reversing, we stated, p. 21:
The question presented here brings into direct conflict two important interests. First, there is the prosecution's interest in presenting to the jury all relevant, probative evidence. On the other *380 hand, there is the accused's interest in knowing reasonably well in advance of trial what the prosecution will try to prove and how it will attempt to make its proof which, of course, includes the names of persons the State expects to call as witness.
This State is committed to the proposition that these conflicting interests are best accommodated and that justice is more nearly achieved when, well in advance of trial, each side has reasonable access to the evidence of the others. See Rule 4.06, supra.
* * * * * *
Under the facts of this case we believe reversal is warranted. Although we are not hide-bound to reverse every case in which there was some failure by the State to abide by a discovery rule, this case should be reversed and remanded for a new trial. Prosecuting attorneys, as well as defense attorneys, must recognize the obligation to abide by discovery rules. A rule which is not enforced is not rule.
Since Box we have consistently reversed cases in which the prosecution has violated Rule 4.06.
As in Box, some empathy can be felt for the position in which the State found itself. Clearly, in this case the State did not know months ahead of time that Mrs. Pope would be a material witness in this trial.
Yet the State was hardly blameless. They were not compelled to act as they did.
During voir dire the State specifically told defense counsel that Mrs. Tracy Pope would not be used as a witness.[1]
Following this, in his opening statement defense counsel told the jury the State had no eyewitnesses.
Then, on Thursday morning, Mrs. Pope suddenly appeared. This left a rather wide exposure to the flanks of the defense's case. The defense could not minimize the damage this did to Cole's case; it damaged his counsel's credibility as well.
At the very minimum the State could have notified Cole's counsel immediately upon learning that Mrs. Pope would be a witness. This notice would have given the circuit judge the opportunity to consider the matter in chambers before the State offered her testimony in open court.
The State might also have informed defense counsel that Mrs. Pope would not be called as a witness in chief, but that she would be called in rebuttal if Cole pursued his ailbi defense before the jury. The Rule makes no requirement of the State to furnish the names of rebuttal witnesses. While Mrs. Pope's testimony would ordinarily be considered as part of the State's case in chief, under these peculiar circumstances, the State could have asked the circuit judge to permit them to call her as a rebuttal witness if Cole pursued an alibi defense. In this event, at least the defense would not have been surprised and the defense could have avoided the untenable situation in which it found itself.
I would hold, therefore, that the trial court committed reversible error in permitting Mrs. Pope to testify over the defense counsel's objection.
I would not hold that in every case the State is restricted to using only witnesses it discloses to the defense prior to trial. There may be cases in which the State can properly use a witness whose identity the State suddenly discovers during the course of trial. But the State's acts must not unfairly prejudice the accused.
In the case at bar, the State discovered a prospective witness was material to the State's case, yet they failed to disclose the witness's name to the defense when the State knew the witness's identity. Under these circumstances I would hold the State should, at the very minimum, immediately notify defense counsel and give him an opportunity to interview the witness as well. Then, before offering such person as *381 a witness to the jury, the circuit judge should be informed of the situation. The judge should then conduct a hearing in chambers and determine whether the defense will be prejudiced because of the failure to know of the witness's identity, and did not have an opportunity to interview the witness prior to trial. If the circuit judge satisfies himself that the mere delay itself in learning this person's identity would cause no harm, he may in his discretion permit the State to offer the person as a witness before the jury. Alternatively, if the judge finds the defendant will be unfairly prejudiced by the State's failure to identify the witness, the judge should not allow him to testify.
In this case, no such precautions were followed, and in my view, the judge obviously should have prohibited the State from offering Mrs. Pope's testimony in the State's case in chief. Indeed, it is clear that the State did everything they could to prevent defense counsel from interviewing Mrs. Pope at all before she took the witness stand.[2]
From the record it appears the defense was caught completely by surprise with a devastating witness the State had represented would not appear. Yet the majority places the entire onus on the defense, faulting it for not asking for a "continuance". What does the majority mean by a "continuance"? Until the next term of court? Or, does the majority mean a "recess"? A recess would have done the defense no good in this case. A continuance in the usual sense of the term (as we use it) would have meant a mistrial in this case.
However laudable our aim, we cannot set forth precise rules of procedure to fit every case of discovery violation. Because the defense failed to follow a precise formula which would have been useless in this case, we affirm. We have gagged on some rather insignificant gnats to reverse for Rule 4.06 violations, notably Foster v. State, supra. Here we swallow a camel to affirm.
A vital concern of the judiciary is a fair and even-handed trial, even for the most odious defendant. Otherwise, trials are a mockery.
I would reverse on this assignment.
I am also of the view that defense counsel should be permitted to argue before a jury the credibility of a confession. Wilson v. State, 451 So.2d 724, 726 (Miss. 1984). The record reveals on this assignment, however, that all the circuit judge told defense counsel was to stay within the record. He did not sustain the State's objection to the argument. (Vol. VII, pp. 1198-1199)
I agree with the majority that as to any other errors, they are procedurally barred.
SULLIVAN, J., joins this opinion.
ROBERTSON, Justice, concurring:

I.
I concur in the result we announce this day, that West Cole's conviction of capital murder and sentence of death should be affirmed. With respect, I suggest that the majority opinion says not enough on one issue and on others reaches the correct result but for the wrong reasons; hence, this separate opinion.

II.
The majority states perfunctorily but unequivocally what has become increasingly clear, that is: that discovery matters in criminal cases are controlled by the guidelines first set forth in Box v. State, 437 So.2d 19, 23-24 (Miss. 1983) (Robertson, J., specially concurring, joined by Justices Dan Lee and Prather). In addition to the cases cited by the majority, we have also accepted and followed the Box concurring opinion in Henry v. State, 484 So.2d 1012, 1014 (Miss. 1986); Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986); Jones v. State, 481 So.2d 798, 803 (Miss. 1985).
This case in so many ways is the prototype which makes clear the advantages of the Box procedure. We have the situation so familiar to all experienced trial attorneys *382  a material witness, in spite of all prosecution diligence, is not found until the last minute. There is no intimation that the prosecuting attorney was acting in bad faith in withholding the witness.
But the fact that the witness truly was discovered only at the last minute, prosecutorial diligence notwithstanding, in no way vitiates the impact of non-disclosure upon the defendant. The unfairness to the defendant is precisely the same where that witness is found on the eve of trial as where the key witness was known to the prosecution for months but simply kept under wraps. It is for that reason that the Box concurrence gives to the defendant the absolute right upon request to a reasonable continuance. That is, where he is confronted with the situation where the prosecution seeks to offer into evidence that which it ought to have disclosed pursuant to a discovery request but didn't, the defendant is given the absolute right, following his interview of the witness, etc., to call the proceedings to a halt. If in this case Cole had requested a continuance and if the trial judge had refused to grant it, I would vote to reverse without hesitation.
Of course, the Box guidelines go on to provide that the prosecution would have had the opportunity to avert the continuance by deciding to proceed without calling the undisclosed witness, Tracy Pope. On the other hand, the Box concurrence makes clear that "if on balance a defendant is of the opinion that he has been unfairly surprised by the state's new evidence, he ought be required affirmatively to request a continuance... . Where the objection is not followed by a motion for a continuance [or mistrial], the defendant should be presumed to have made his judgment call and to have decided on balance that his chances are better if the case proceeds, rather than giving the state the opportunity to start afresh. Where no motion for a continuance [or mistrial] is made, the Rule 4.06 issue should be deemed waived for purposes of appeal." 437 So.2d at 25.
Today's authoritative reification of Box is indeed good news, for one of our purposes in Box was to get this Court out of the discovery business. We have decided so many Rule 4.06 cases and have decided them so inconsistently.
For example, we have held on some days that only the defendant and his counsel are in a position to judge the materiality of discoverable but undiscovered evidence. See White v. State, 498 So.2d 368, 370 (Miss. 1986); Foster v. State, 493 So.2d 1304, 1308 (Miss. 1986); Johnson v. State, 491 So.2d 834, 837 (Miss. 1986); Hentz v. State, 489 So.2d 1386, 1388 (Miss. 1986). On other days we recognize a quite different, objective test for materiality. See Boches v. State, 506 So.2d 254, 263 (Miss. 1987).
On some days we hold that a defendant must show prejudice before he may parlay a discovery violation into reversal on appeal. See Moore v. State, 508 So.2d 666, 668 (Miss. 1987); Buckhalter v. State, 480 So.2d 1128, 1129 (Miss. 1985); McKinney v. State, 482 So.2d 1129, 1130 (Miss. 1986). On others we say little or nothing of any prejudice test en route to reversal. See Henry v. State, 484 So.2d 1012, 1013-14 (Miss. 1986); Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986); Ford v. State, 444 So.2d 841, 843 (Miss. 1984). On some days we find the earth flat. On others we see it square.
I have no illusion the Box guidelines will prove any more susceptible of mechanical application than does any other law. They do, I suggest, hold out the hope of a more principled, consistent resolution of criminal discovery problems. The mere possibility this may be achieved should produce sighs of relief among the bench and bar.

III.
Whether the Box guidelines should be enforced in this July 1984 trial deserves attention. The point of concern is whether defense counsel had fair notice of the necessity of his moving for a continuance or mistrial following his interview with the witness Tracy Pope. I say this in the context of Williams v. State, 507 So.2d 50, 53 (Miss. 1987) wherein we declined to impose upon the prosecution a waiver of the right to place in the record the reasons for making *383 certain peremptory challenges to black jurors in the wake of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Williams we remanded to give the prosecuting attorney an opportunity to make such statement for the record for the rather obvious reason that the prosecuting attorney had no way of knowing at the time of trial of the necessity for placing in the record the reasons for his peremptory challenges. This was because Batson had not been decided at the time the Williams case was tried.
The case at bar is in a wholly different posture. In the first place, motions for continuance  a motion for mistrial would be the equivalent  were certainly well-known and well within the arsenal of strategems available to defense counsel long before the trial of the case at bar. Counsel for West Cole may not seriously contend that he did not know he had a procedural right to move for a continuance or mistrial. Second, Box was decided on August 24, 1983, and was certainly published in the Southern Reporter shortly thereafter. The trial of the case at bar occurred some eleven months later  beginning July 23, 1984. Box was available to defense counsel prior to the trial of this case. Moreover, the matter of the applicability of this particular prong of the Box guidelines has been authoritatively resolved in Cabello v. State, 471 So.2d 332, 343 (Miss. 1985), a case in which we declined to reverse a discovery violation where the defendant made no request for a mistrial or continuance.
I have been  and remain  no fan of the idea of procedural bars. See, e.g., my separate opinions in Pennington v. State, 437 So.2d 37, 41-42 (Miss. 1983); and Hill v. State, 432 So.2d 427, 443-51 (Miss. 1983); and Section IV below. I am ordinarily uncomfortable with the idea of affirming a criminal conviction, particularly in a capital case, because the defendant's attorney failed procedurally. Here, however, defense counsel was given a reasonable opportunity to interview Tracy Pope before she testified. If he thought his case was being prejudiced by the fact that he had not theretofore had the opportunity to interview her, it was incumbent upon him to say so. The fact that defense counsel made no demand for a continuance or mistrial may only be read as a judgment on his part that such was not reasonably necessary to protect the interests of his client. These considerations, plus Cabello, convince me that we should affirm on this issue.

IV.
For this Court to invoke a single procedural default and affirm a death sentence is one thing. See Hill v. State, 432 So.2d 427, 439-40 (Miss. 1983). This particularly so in the Box context, where defense counsel's objection got him the opportunity to interview the witness and where counsel's subsequent silence suggests no particular advantage to the accused from a continuance or mistrial. But where we hold nine defense assignments of error waived or otherwise procedurally barred, we are asking for trouble.
Let me be specific. Nine procedural defaults are this day enforced against Cole, each in fact attributable to his counsel's slowfootedness. These include
(1) failure to request a continuance after having been given the opportunity to interview the witness, Tracy Pope (see majority opinion, Section I, and Section II of this opinion);
(2) failure to secure a ruling on objections to final argument by counsel (majority opinion, Section III);
(3) failure to request a continuance where two judgments of conviction were offered as evidence of aggravating circumstances (majority opinion, Section V; also a Box default);
(4) failure to object to jury instructions (majority opinion, Section VI);
(5) failure to object to evidence of two prior convictions which are not allowable as statutory aggravating circumstances (majority opinion, Section IX);
(6) failure to make offer of proof regarding certain mitigating evidence excluded at sentencing phase (majority opinion, Section XI);
*384 (7) failure to object to jury instruction regarding aggravating circumstance of "especially heinous, atrocious and cruel" (majority opinion, Section XIII);
(8) failure to object to jury instruction on burden of proof at sentencing phase (majority opinion, Section XIV); and
(9) failure to raise issue of racial discrimination in administration of death penalty (majority opinion, Section XVIII).
In today's case, I am convinced the result would be the same if we decided these points on the merits  with the exception, of course, of the Box waivers. The other points listed above are substantively without merit, all of which makes me wonder what motivates the majority to hold them waived, for if not in today's case then somewhere down the road such a course will surely boomerang. I say this in the context of the near certain fact that in this and every other case in which the penalty of death is imposed, at some point, usually on post-conviction proceedings, the defendant will argue that at his trial he was denied his constitutional right to the effective assistance of counsel.[1]See, e.g., Irving v. State, 498 So.2d 305, 317 (Miss. 1986); Evans v. State, 485 So.2d 276, 279-82 (Miss. 1986); Dufour v. State, 483 So.2d 307, 308-10 (Miss. 1985). When we hold nine of defendant's assignments of error barred because they were not procedurally preserved, we would ordinarily be hard pressed to hold that trial counsel was effective. Indeed, the case will come where, if there be candor in our character, we must confess that procedural forfeiture of nine assignments of error comes perilously close to establishing the ineffectiveness of trial counsel as a matter of law.

V.
I find misleading one comment made by the majority en route to its many holdings that points asserted by Cole have been waived for want of procedural niceties. I refer to the statement on page 369.
If no contemporaneous objection is made, the error, if any, is waived. This rule's applicability is not diminished in a capital case. [citations omitted]
If this statement be read as stating that the contemporaneous objection rule is not eviscerated altogether in capital cases, the statement is certainly correct. The rule does apply in capital cases. Its content, however, is softened.
One source of this softened content is the "death is different" principle. Because capital is "qualitatively different," Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) holds that
there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment.
428 U.S. at 305, 96 S.Ct. at 2991.
The death is different principle has been recognized by the Supreme Court on occasions almost too often to enumerate. See, e.g., Booth v. Maryland, ___ U.S. ___, ___ n. 12, 107 S.Ct. 2529, 2536 n. 12, 96 L.Ed.2d 440 (1987); Ford v. Wainwright, 477 U.S. 399, 411-412, 106 S.Ct. 2595, 2603, 91 L.Ed.2d 335, 347 (1986); Spaziano v. Florida, 468 U.S. 447, 456, 104 S.Ct. 3154, 3160, 82 L.Ed.2d 340, 349 (1984); Sullivan v. Wainright, 464 U.S. 109, 112, 104 S.Ct. 450, 78 L.Ed.2d 210, 213 (1983); Stephens v. Kemp, 464 U.S. 1027, 1032, 104 S.Ct. 562, 565, 78 L.Ed.2d 370, 375 (1983) (per dissenting opinion of Justice Powell, joined by then Chief Justice Burger, now Chief Justice Rehnquist and Justice O'Conner); Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392, 403 (1980); Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973, 989-90 (1978); Coker v. Georgia, 433 U.S. 584, 598, 97 S.Ct. 2861, 2869, 53 L.Ed.2d 982 (1977); Gardner v. Florida, 430 U.S. 349, 357-58, 97 S.Ct. 1197, 1204-05, 51 L.Ed.2d 393, 402 (1977); Gregg v. Georgia, 428 U.S. 153, 187-88, 96 S.Ct. 2909, 2931, 49 L.Ed.2d *385 859 (1976); Furman v. Georgia, 408 U.S. 238, 287-89, 306, 92 S.Ct. 2726, 2751, 3752, 3760, 33 L.Ed.2d 346, 376-78 (Brennan, J., and Stewart, J., concurring) (1972).
A comparable principle recognized in this state is that of heightened appellate scrutiny of criminal trials which have resulted in imposition of the sentence of death. The idea has its roots deep in our jurisprudential past. See, e.g., Russell v. State, 185 Miss. 464, 469, 189 So. 90, 91 (1939). It received its modern expression in Irving v. State, 361 So.2d 1360 (Miss. 1978) where we wrote
We recognize that thoroughness and intensity of review are heightened in cases where the death penalty has been imposed. [citation omitted] What may be harmless error in a case with less at stake becomes reversible error when the penalty is death.
361 So.2d at 1363.
Other cases recognizing the principle, beginning with the most recent, include Fisher v. State, 481 So.2d 203 (Miss. 1985); Jones v. State, 461 So.2d 686 (Miss. 1984); Neal v. State, 451 So.2d 743 (Miss. 1984); Williams v. State, 445 So.2d 798, 810 (Miss. 1984); Laney v. State, 421 So.2d 1216, 1217 (Miss. 1982).
We are not the only state to recognize the heightened scrutiny principle. See, e.g., State v. Thomas, 427 So.2d 428, 433 (La. 1982). South Carolina goes so far as to ignore the contemporaneous objection rule in all death penalty cases. See State v. Goolsby, 275 S.C. 110, 268 S.E.2d 31, 39 (1980).
Without further belaboring the point, the majority's statement that the contemporaneous objection "rule's applicability is not diminished in a capital case" is five fold wrong. It is wrong as a matter of law, as the death-is-different and heightened scrutiny cases make clear. It is wrong as a matter of policy, because death is different, a fact beyond alteration by sophistry or polemics or dogmatic declaration. It is wrong as a matter of prediction because no court composed of judges possessing humanity has the stomach for an unwaivering rule that all procedural forfeitures translate into death. It is wrong because it is susceptible of abuse, of use for less than laudable reasons.[2] Beyond these points, it is simply wrong.

VI.
In Section XVII the Court discussed the Defendant's requested Instruction D-5 which would have defined for the jury the concept of a "mitigating circumstance." The Court holds the assignment of error without merit, its reason being that the tendered instruction "is not required." While I concur in that view, I note the point for it seems a matter of common sense that such a definitional instruction might be quite helpful to the jury. I agree that the instruction defining mitigating circumstances is not required, but it certainly ought to be given where requested. And the same goes for any instruction the State may request defining aggravating circumstances.
Except as noted above, I concur in the opinion of the Court.
PRATHER and ANDERSON, JJ., join in this opinion.
DAN M. LEE, J., joins in parts I, II, III and VI only.
NOTES
[1] See Appendix "A".
[1] While Mrs. Pope testified she was not seen by the officers until Tuesday morning, July 24, 1984, apparently from somewhere the prosecution and the defense had some information she was a possible witness. In any event, the defense counsel was led by the prosecution to believe she would not be called as a witness.
[2] We have also frowned upon State's counsel attempting to impede defense counsel talking to a trial witness. Gallion v. State, 396 So.2d 621, 624 (Miss. 1981).
[1] Louisiana's approach to procedural defaults in death penalty cases is quite sensible.

In death penalty cases, this court has reviewed assignments of error, despite the absence of a contemporaneous objection, ... [to avoid] later consideration of the error in the context of [a claim of] ineffective assistance of counsel.
State v. Hamilton, 478 So.2d 123, 126 n. 7 (La. 1985).
[2] See Evans v. State, 441 So.2d 520, 531-33 (Miss. 1983); and Wheat v. Thigpen, 793 F.2d 621, 626-27 n. 5 (5th Cir.1986).